IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISIONS

FLORIDA MEDICAL ASSOCIATION, INC, et al.,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEATH, EDUCATION AND WELFARE, et al.,

    Defendants

JENNIFER ALLEY, et al.

    Intervening Defendants.

Case No. 78-178-Civ-J-99MMH-MCA

## MOTION TO INTERVENE

Come now Jennifer D. Alley and Real Time Medical Data, L.L.C. ("RTMD") and, pursuant to Rule 24, Federal Rules of Civil Procedure, respectfully move to intervene in the above-styled action in order to vacate a permanent injunction entered by this Court in *Florida Medical Association v. HEW*, 479 F.Supp. 1291 (M.D. Fla. 1979)("*FMA* Injunction"). As support for this Motion, RTMD states the following:

## MEMORANDUM AND POINTS OF AUTHORITY

In 1979, this Court issued a permanent injunction in this "reverse-FOIA" case, finding that Exemption 6 of the Freedom of Information Act (FOIA) prohibited the Secretary of Health, Education and Welfare (HEW) from gratuitously publishing an annual, nationwide list detailing Medicare reimbursements paid to individual health care providers. More than forty years later, with the 1979 version of Medicare reimbursement long gone, HHS has co-opted the *FMA*

1910556 v1

Injunction, using this Court's ruling in *FMA* as an excuse for across-the-board denials of any FOIA request seeking disclosure of Medicare Part B data for any reason.

HHS was not always such an activist for the suppression of Medicare Part B data. Prior to 2007, HHS routinely granted RTMD's regular FOIA requests for the Medicare Part B reimbursement data of Alabama health care providers. In fact, from 2001 to 2007, HHS regularly provided to RTMD *exactly* the same data that HHS now claims is protected by both the *FMA* Injunction and Exemption 6 in general.[1] During those years, HHS provided RTMD with literally *millions* of lines of this supposed "*FMA*-protected" Medicare data for the state of Alabama, never suggesting that these requests should be denied under the *FMA* Injunction or Exemption 6.

However, while HHS regularly granted RTMD's *single-state* FOIA requests for Medicare Part B data for all those years, HHS balked when RTMD submitted *multi-state* FOIA requests seeking the same information for Florida, Georgia, Mississippi and Tennessee health care providers. At that time, HHS employed an internal "two hour rule" under which HHS could quietly deny any FOIA requests that could not be fulfilled with two hours of work. In fact, HHS actually admitted denying RTMD's multi-state FOIA requests for Medicare Part B data under the two-hour rule, but continued to grant RTMD's single state FOIA requests for the same information. (Declaration of Jennifer Alley, attached herein as Exhibit A, at ¶¶ 11, 16, 18). In

---

[1] Specifically, HHS claims that the *FMA* Injunction prohibits disclosure of the following elements of RTMD's requested Part B outpatient data: (1) provider name, provider address and provider city of individual physicians; (2) provider name, provider address and provider city when the provider group is a practice that consists of only one or two individual physician members (i.e., small group practices that can be considered closely held corporations); and (3) provider zip codes for individual physicians and small group practices where less than 5 providers are located. (Alley Decl. at ¶7).

1910556 v1

2

denying these FOIA requests, CMS never mentioned that the *FMA* Injunction, or Exemption 6 itself, were in any way relevant to these denials. (*Id.*)

RTMD could not ignore the fact that HHS denied valid FOIA requests simply because HHS did not want to spend more than two hours worth of work on those requests. Accordingly, in 2007, RTMD brought a FOIA action against HHS in the United States District Court of Alabama, Northern Division, styled as *Alley et al v. Department of Health and Human Services*, Case No. 07-00096-CV-BE-E, challenging HHS's denial of RTMD's multi-state FOIA requests. At that point, with RTMD poised to expose HHS's internal two-hour rule, HHS suddenly claimed -- for the first time -- that the *FMA* Injunction prohibited HHS from disclosing the requested Medicare data.

From then on, HHS refused to grant even single-state requests for Medicare Part B data, and adopted the *FMA* Injunction as the centerpiece of its defense against RTMD's claims in the *Alley* case. In the subsequent five years of litigation in the *Alley* case, HHS argued to the point of *zealotry* that the Middle District of Florida fully intended that the 1979 *FMA* Injunction would permanently prohibit any and all future disclosures of Medicare Part B data under the FOIA. In fact, HHS argued that, if the *FMA* Injunction did not apply so comprehensively, the Alabama District Court should issue an injunction that *would* go this far.

RTMD consistently opposed HHS's extreme interpretation of the *FMA*, arguing that the *FMA* Injunction was limited to facts that are extinct under modern-day Medicare reimbursements statutes and was thus simply inapplicable to RTMD's claims against HHS. The Alabama District Court ultimately agreed with RTMD, finding that that the *FMA* Injunction did not apply to RTMD's claims against HHS, that Exemption 6 did not prohibit disclosure of the Medicare Part B data, and that HHS was required to disclose this data to RTMD. (Al. Dist. Ct. Doc 48).

However, while RTMD's arguments were meritorious, they were ultimately found to have been made to the wrong Court. On appeal, the Eleventh Circuit reversed the Alabama District Court's judgment, finding that RTMD suit in the Alabama District Court was essentially an improper collateral attack on the *FMA* Injunction. *Alley v. Dep't of Health and Human Services*, 590 F.3d 1195, 1204 -1205 (11th Cir. 2009). The Eleventh Circuit ruled, in no uncertain terms, that RTMD's claims against HHS gave RTMD has a direct interest in the disposition of the *FMA* case, and that RTMD was required to challenge the *FMA* Injunction in this Court in order to pursue its claims against HHS. *Id.* at 1204.

Accordingly, RTMD now comes before this Court seeking intervention as a matter of right, as directed by the Eleventh Circuit. The facts establish that RTMD's motion is timely filed, and easily meets the requirements of Rule 24, Fed. R. Civ. P, for intervention as a matter of right, or by the permission of the Court. For all the reasons stated below, the Motion is due to be granted.

### I. BACKGROUND FACTS

#### A. RTMD's Use Of Medicare Part B Data.

RTMD is a commercial entity whose primary business is providing a unique package of health care data to a targeted client base consisting of hospitals and other health care facilities. (Alley Decl., ¶ 3). RTMD utilizes Medicare claims data as part of the information packages that it tailors to its clients, in order to assist those clients with strategic healthcare planning to understand and best utilize Medicare funds; in essence, RTMD helps hospitals provide more efficient and effective care to their patients from limited Medicare funds. (*Id. at ¶4*) RTMD's business is dependent on Medicare data that it receives via FOIA requests. (*Id. at ¶4*)

In particular, Medicare Part B reimbursement data is an essential component of the health care data package that RTMD provides to its clients. (*Id*). RTMD's clients use this information to understand the operations and activities of Medicare reimbursements, and to make decisions which directly impact the level of services that these health care entities can afford to provide to the public. (*Id*. at ¶¶3 - 4, 14). The Medicare Part B data has a direct correlation with which medical equipment these facilities will purchase, where they will provide services, which doctors they will hire and how they will allocate limited resources to meet the most need. In turn, these decisions directly impact the care that they provide to their patients and communities. (*Id*.).

### B. HHS's Process of Granting RTMD's Previous FOIA requests.

In 2001, RTMD began submitting FOIA requests to HHS for certain Medicare data, including the Part B data, in regards to outpatient procedures performed by physicians in Alabama that year. After an initial denial of the request on procedural grounds. (*Id*. at ¶5.) HHS granted the request, and then the continued to provide this data to RTMD for the next six years. (*Id*. at ¶¶8-9). At no point did HHS ever mention the *FMA* Injunction or Exemption 6 in regards to this data. However, on February 6, 2003 RTMD expanded its FOIA requests to include Georgia, Tennessee, Mississippi and Florida, requesting the same data that HHS was already providing to RTMD for Alabama. (*Id*. at ¶10). HHS denied those multi-state requests for Medicare Part B data, after regularly providing the data in response to RTMD's single-state requests. (*Id*. at 11).

RTMD appropriately appealed HHS's denial of its FOIA requests for the Florida, Georgia, Mississippi and Tennessee data. (*Id*. at ¶¶ 15-17). Finally, on January 11, 2007 RTMD filed suit against HHS in the Alabama District Court, requesting preliminary and injunctive relief prohibiting HHS from withholding from RTMD the records requested pursuant to the FOIA and

directing HHS to produce such records to RTMD. (Ala. Dist. Ct. Doc. 1). HHS subsequently raised the *FMA* Injunction in its answer to RTMD's Complaint, having never mentioned it to RTMD at any point prior to RTMD's filing suit based upon the "two hour rule" denials. (Ala. Dist. Ct., Doc. 5).

On May 8, 2008, the Alabama District Court entered an Order granting partial summary judgment in favor of RTMD, finding that the *FMA* Injunction did not apply to RTMD's FOIA requests and, further, that the requested data was not protected by Exemption 6. (Ala. Dist. Ct. Doc. 48). The Alabama District Court ordered HHS to release the requested data in response to RTMD's FOIA requests from that point forward. (*Id.*)

HHS appealed the decision to the Eleventh Circuit, again arguing that the *FMA* Injunction prevented disclosure of Medicare Part B data requested by RTMD. On December 18, 2009, the Eleventh Circuit vacated the opinion of the Alabama court in *Alley v. U.S. Dept. of Health and Human Services*, 590 F.3d 1195 (11th Cir. 2009), upholding the *FMA* Injunction based *solely* on the appellate posture of the case. The Eleventh Circuit held that, under the U.S. Supreme Court's opinion in *GTE Sylvania, Inc. v. Cons. Union of the U.S., Inc.*, 445 U.S. 375, 384 (1980), an injunction issued by one court against the disclosure of information may not be collaterally attacked in another court in a FOIA lawsuit seeking disclosure of that information. *Alley* at 1204-1205.

The Eleventh Circuit thus concluded that the Alabama District Court could in no way rule upon the applicability of the *FMA* Injunction as a matter of procedure, regardless of whether the Injunction was unsound, unwise, or otherwise in need of being modified or vacated. *Alley* at 1204. The Eleventh Circuit expressly held that RMTD's remedy against HHS's alleged wrongful

withholding of the requested data was to challenge the *FMA* Injunction before the Middle District of Florida. *Id.*

The litigation of the *Alley* case did not, however, end there. Upon remand, HHS filed a motion for summary judgment in the Alabama District Court, arguing that the *Alley* opinion required the Alabama District Court to find, on the merits, that Exemption 6 prohibits disclosure of Medicare Part B data. (Ala. Dist. Ct., Doc. 126). RTMD was thus forced to spend its limited funds to fight this motion, in an effort to prevent HHS from improperly expanding the *Alley* opinion far past its narrow limits.

At the same time, RTMD recognized that the *Alley* opinion might provide a basis for obtaining the majority of Medicare Part B information sought, by allowing RTMD to seek disclosure of Medicare Part B data for all physicians who were not AMA members or licensed to practice medicine in Florida. In other words, it appeared that RTMD might be able to obtain the majority of Medicare Part B data that was sought, regardless of the *FMA* Injunction. RTMD thus filed its own Motion for Summary Judgment Upon Remand, requesting that the Alabama District Court order the release of all "reasonably segregable" Medicare Part B data for all physicians not covered by the *FMA* Injunction.

The briefing schedule for the parties' respective motions lasted until June 2010, and the Alabama District Court did not issue a dispositive Order until March 30, 2011. In that order, the Court essentially found that HHS could not "reasonably segregate" the data of physicians not covered by the *FMA* Injunction and thus denied RTMD its requested relief. (Al. Dist. Ct. Doc. 140). The ruling was not final until April 12, 2011. (Al. Dist. Ct. Doc. 142). This ruling ended any realistic opportunity for relief in the *Alley* case. At that point, it was time for RTMD to either challenge the *FMA* Injunction in this Court, or simply give up. RTMD chose the former, and

now filed the instant motion within one week after the Alabama District Court entered its last Order in the *Alley* litigation.

## II.  ARGUMENT

### A.  RTMD Is Entitled To Intervene In This Case As A Matter Of Right Under Rule 24(a)(2).

A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) If these requirements are met, the district court *must* allow the movant to intervene. *Id.* (emphasis added). As shown below, all of these requirements are met here, and RTMD's Motion to Intervene should thus be granted.

#### 1.  RTMD's Motion to Intervene is timely filed.

In determining whether a motion to intervene is timely filed, the Court must consider: (1) the length of time during which the movants knew or reasonably should have known of their interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the detainees' failure to move for intervention as soon as they knew or reasonably should have known of their interest; (3) the extent of prejudice to the detainees if their motion is denied;  and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely. *United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir.1983). Here, all of these factors establish that the instant Motion is timely filed, and due to be granted.

As a threshold matter, it is important to recognize that RTMD originally filed suit in the Alabama District Court, rather than challenging the *FMA* Injunction in this Court, based upon its the good faith belief that the *FMA* Injunction simply did not apply to RTMD's claims against HHS. RTMD's position on this point was supported by applicable caselaw, sound legal arguments, and even a clear opinion by another federal court on the same issue. *See* Al. Dist. Case Doc. Nos. 30, 56, 72 and 86; *see also Consumers' Checkbook, Ctr. for Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 502 F.Supp.2d 79, 83-86 (D.D.C.2007).[2]   Based upon these authorities and arguments, RTMD meritoriously argued that it was not appropriate, much less necessary, to challenge the *FMA* Injunction before seeking judicial relief within its own federal district. (*See* Al. Dist. Case Doc. Nos. 30, 56, 72 and 86).

Of course, the Eleventh Circuit ruled otherwise in its December 2009 opinion in *Alley*, holding that RTMD was required to challenge the *FMA* Injunction before the Middle District of Florida, rather than in an action in the Alabama District Court. However, even at that point, the time was not yet ripe for RTMD to consider intervening in the *FMA* case. After the Eleventh Circuit issued its December 2009 opinion, the case was remanded to the Alabama District Court where the parties continued litigating the case for more than a year. In fact, both RTMD and HHS filed substantive Motions for Summary Judgment before the Alabama District Court, seeking to resolve their conflict within the bounds of the *Alley* case, without starting all over in a motion before this Court.

This economy of litigation was *crucial* for RTMD, a privately owned company with limited resources for funding lawsuits. (Alley Decl. at ¶28)  After years of litigation in *Alley*,

---

[2] This opinion was later reversed by a panel decision of the D. C. Circuit, with only two of three judges concurring, and with a sharp dissent finding that the *FMA* Injunction did not apply to the case. *Consumers' Checkbook v. HHS*, 554 F.3d 1046, 1049 (D.C. 2009).

RTMD's resources are essentially depleted; thus, when the *Alley* case was remanded to the Alabama court, RTMD simply could not afford to litigate in two different federal district courts. (*Id.*) Because it then appeared that RTMD might still win at least some measure of relief in the Alabama District Court, RTMD pursued that litigation in hopes that it would not become necessary to begin litigation in this Court.

The parties' respective, post-remand Motions for Summary Judgment required extensive briefing, and necessitated several extensions of time for filing briefs. All told, the briefing period itself spanned nearly six months, and the Court did not enter an order on the motions until March 2011, and that Order was not complete until the taxing of costs on April 12, 2011. RTMD thus filed this Motion within a week after it failed in its last effort for relief in the *Alley* litigation. Under these circumstances, RTMD field the instant with remarkable dispatch.

In regards to the further elements of timeliness under Rule 24(a)(c), neither HHS nor the AMA disputes the fact that RTMD may seek intervention as a matter of right under Rule 24 at this time, and thus are not prejudiced by the timing of this Motion. At the same time, the Eleventh Circuit has ruled that RTMD's right to relief from HHS's actions literally depends upon challenging the *FMA* Injunction before this Court, and thus denial of this Motion will result in the most extreme prejudiced to RTMD. Obviously, the "prejudice" factors of the timeliness inquiry thus weigh entirely in RTMD's favor.

Finally, this case certainly presents unusual circumstances that plainly militate in favor of RTMD's motion to intervene in a case that was litigated forty years ago. First and foremost, the both the Medicare data at issue in the original *FMA* action, and the reasons for protecting that data from disclosure, simply do not exist today. In 1979, Medicare's primary function was to pay doctors for their services and the reimbursement system was geared toward that goal; thus

Medicare reimbursed doctors for "reasonable" charges that were not disclosed to the public and that were set, in part, by the doctors themselves in their own "discretion." However, the Omnibus Budget Reconciliation Act of 1989 radically changed Medicare reimbursements from a generous "discretionary fee" system to a rigid, non-discretionary fee schedule that *is* public information. From then on, the kind of sensitive, non-public Medicare data at issue in *FMA* was extinct.

Also, this fundamental change in Medicare reimbursement has all but eliminated the privacy interests that held such sway in *FMA*.[3] Now that Medicare fees are set by Congress and are public information, disclosure of the requested data in this case no longer exposes an individual doctor's "discretionary" billing practices to public scrutiny, or to comparison by competitors. Added to this is the fact that, today, the majority of physicians practice as corporate or business entities which, as a matter of law, *have no privacy interests in the requested Medicare data*. Together, these changes have virtually eliminated the privacy interests that were alleged to be so significant in *FMA*.

Even more importantly, the physicians' privacy interests tipped the scales in *FMA* because they were balanced against a featherweight "public interest" in the disclosure. In fact, the only "public interest" mentioned in *FMA* was a vague reference to furthering the "national debate" over "putative legislative activity involving national health insurance." See id. at 1305.

---

[3] Some of these changes include: The 1982 Medicare Utilization and Quality Control Peer Review Program, requiring the Secretary to contract with utilization and quality control Pros to promote the economy, effectiveness, efficiency, and quality of services reimbursed through Medicare. 42 U.S.C. 1320c et seq and 42 U.S.C. 1395y(g)' The Deficit Reduction Act of 1984 (Public Law 98-369), mandating the development and implementation of the Medicare prospective payment system (PPS) in order to contain spiraling health care costs by reimbursing providers at a fixed rate; and the 2003 Medicare Prescription Drug, Improvement and Modernization Act of 2003 established the Medicare Health Care Quality Demonstration Program to "examine health delivery factors that encourage the delivery of improved quality in patient care." 42 U.S.C. §1359cc-3(b).

Compared to this lifeless "public interest," *any* privacy interest would look all the more compelling since, after all, "even a modest privacy interest outweighs nothing every time." National Ass'n of Retired Fed. Employees v. Horner, 873, 879 (D.C.Cir. 1989).

This fundamental shift in Medicare's purpose has sharply intensified the public's desire and need for the disclosure of Medicare reimbursement information, as has the profound, unresolved issues presented by health care reform. In many ways, the methods, the policies and degree of waste and fraud inherent in Medicare reimbursement bears precious little resemblance to their 1979 counterparts, yet HHS persists in withholding Medicare Part B based upon the 1979 analysis of this Court.

Given all this, as well as the clear direction of Eleventh Circuit, the time is clearly exactly right for RTMD to challenge the *FMA* Injunction in this Court. RTMD has met all the elements of timeliness under Rule 24(a) and its Motion is due to be granted.

2.  **RTMD has a direct interest in the *FMA* action which can be protected only by RTMD's intervention in this case.**

The Eleventh Circuit has not only established that RTMD has a direct interest in the disposition of the *FMA* action, but has essentially *ordered* RTMD to challenge the *FMA* Injunction before this Court. In overturning the opinion of the Alabama District Court, the Eleventh Circuit pointedly held:

> The rule that a FOIA lawsuit may not be used to collaterally attack an injunction prohibiting disclosure of certain records does not mean there is no remedy for the party seeking those records. It means that the party must first succeed in having the issuing court modify or vacate the injunction barring disclosure. If that court refuses, the party may appeal that refusal. A direct attack, instead of a collateral one, is the proper procedure. (cites omitted).
>
> * * *
>
> An example of the proper procedure is what the government did in 1982, when it became concerned that the *FMA* injunction might interfere with some disclosures

for law enforcement purposes that are expressly permitted under the Privacy Act, 5 U.S.C. § 552a(b)(7). The government moved the United States District Court for the Middle District of Florida to modify its injunction to make it clear that those disclosures were permitted, and the court did so. *See Fla. Med. Ass'n, Inc. v. Dep't of Health & Human Servs.*, No. 78-178-Civ-J-S (M.D. Fla. 18 ec. 2, 1982). <u>**Alley should have handled any complaints she had about the FMA injunction in the same way, by taking them to the same court**</u>.

*Alley* at 1294. (Emphasis added).

The Eleventh Circuit has also noted the changes in Medicare, in the public's interest in Medicare data, and other changes across forty years that have irrevocably altered the circumstances that produced the *FMA* Injunction in 1979. To that end, the Eleventh Circuit ended its *Alley* opinion with obvious hints as to what should happen next in this case:

> Maybe the rationale behind [the *FMA*] injunction has faded enough with time that it should be modified or vacated. Maybe not. Perhaps, as Alley also contends, a "fundamental shift in Medicare's purpose, as well as dramatic increases in the number of Medicare participants," have bolstered the public interests favoring disclosure. Perhaps not. If Alley wants to raise those issues, she can do so before the United States District Court for the Middle District of Florida in a proceeding to alter or vacate the injunction; we will not decide those issues here.

*Alley* at 1208. The Eleventh Circuit has, therefore, plainly declared that RTMD has a direct interest in the *FMA* case, and is entitled to intervene under Rule 24 in order to challenge the *FMA* Injunction. RTMD thus has one remedy, yet no way of accessing that remedy, unless and until this Court allows RMTD to intervene in this case. RTMD thus plainly meets the "interest" requirement of Rule 24(a)(c) and its Motion to Intervene should be granted.

3. **No existing party can adequately represent RTMD's interest in the *FMA* action.**

At this point, only the AMA and HHS remain as apparent parties to the *FMA* case and, for obvious reasons, neither party can represent RTMD's interests. In particular, HHS is a

defendant in name only, and can be expected to litigate aggressively in favor finding that the *FMA* Injunction should constitute a permanent, total ban on disclosure of any Medicare part B data under FOIA. As RTMD's longtime adversary in the *Alley* litigation, HHS could hardly be more hostile to RTMD's interests in this case.

Further, Dow Jones & Company ("Dow Jones") has filed a Motion to Intervene in the case and the motion should be granted for the reasons stated in Dow Jones' Motion. However, Dow Jones represents the interests of a vast, nationwide media organization, seeking to establish its rights to purchase Medicare information from HHS via contract, as well as to obtain Medicare data by means of a FOIA request. Moreover, Dow Jones seeks several types of Medicare data that RTMD has not, and likely never will, have reason to request. In contrast, RTMD's interest is in the full disclosure of Medicare Part B data, via the timely and appropriate processing of valid FOIA requests, in order to provide the most benefit to the health care clients who have come to rely upon this data, as well as for the general public interest. Further, while Dow Jones has established ample grounds for its Motion, RTMD is the party which has been essentially instructed by the Eleventh Circuit to intervene in this action. As the Eleventh Circuit has clearly stated, RTMD is required to protect its own interests, and must do so by challenging the *FMA* Injunction in this Court. RTMD thus meets the final requirements for intervention as a matter of right under Rule 24(a)(2). Given all this, Dow Jones and RTMD are not similarly situated to the point that either party could adequately represent the interests of the other. RTMD's Motion should therefore be granted.

      **B.    RTMD Plainly Meets The Requirements For Permissive Intervention Under Rule 24(b)(2).**

Even if the Court should somehow find that RTMD does not meet the requirements for intervention as a matter of right under Rule 24(a)(2), the facts establish that

RTMD "shares with the main action a common question of law or fact" which warrants permissive intervention under Rule 24(b). The Eleventh Circuit has not minced words -- RTMD's right to disclosure of Medicare Part B data under the FOIA depends upon the same Exemption 6 analysis that was presented in this case over forty years ago. That case must be reopened, and that Exemption 6 analysis reassessed, in order to resolve the questions of law presented in RTMD's claims against HHS for wrongful withholding of the requested Medicare Part B data. Thus, as the very least, RTMD is entitled to the Court's permission to intervene in this Court, and address the issues that so completely govern its right to obtain Medicare Part B data under the FOIA.

## IV. CONCLUSION

In view of the foregoing, RTMD respectfully requests that the Court enter an order granting RTMD's motion to intervene in this case.

### 3.01(g) Certification

Moving counsel hereby certifies that they have conferred with opposing counsel, and they have no objection to this Motion

>/s/ Howard S. Marks
>Howard S. Marks FL Bar #0750085
>Victor L. Hayslip AL Bar # HAY019,
>  *Pro Hac Vice to be filed*
>Julie W. Pittman AL Bar # PIT628,
>  *Pro Hac Vice to be filed*
>Attorneys for Plaintiffs
>Ms. Jennifer D. Alley and Real Time Medical Data, L.L.C.

BURR & FORMAN LLP
369 N. New York Avenue, Third Floor
Winter Park, Florida 32789
Telephone: (407) 647-4455
Facsimile: (407) 740-7063

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey M. Scott
Florida Medical Association Office of General Counsel
1430 Piedmont Drive East
Tallahassee, Florida 32308
850-224-6496
850-222-8030 (fax)

*Florida Medical Association*

Elizabeth J. Shapiro
U.S. Department of Justice
Deputy Branch Director
Federal Programs Branch, Civil Division
20 Massachusetts Avenue, NW
Room 7152
Washington, DC 20530
202-514-5302

*Department of Health and Human Services f/k/a Department of Health, Education and Welfare*

Michael G. Tanner
Helen A. Peacock
Tanner Bishop
One Independent Drive, Suite 1700
Jacksonville, Florida 32202
904-598-0034
904-598-0395 (fax)

*Attorneys for Dow Jones & Company, Inc.*

Jack R. Bierig
Newton N. Minow
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603
312-853-7000
312-853-7036 (fax)

*American Medical Association*

Roberto Rodriguez
Assistant United States Attorney
300 North Hogan Street
Suite 700
Jacksonville, Florida 32202
904-301-6300
904-301-6310 (fax)

*Department of Health and Human Services f/k/a Department of Health, Education and Welfare*

Laura R. Handman
Ronald G. London
John R. Eastburg
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006-3401
202-973-4200
202-973-4499 (fax)

*Attorneys for Dow Jones & Company, Inc.*

/s/ Howard S. Marks
Howard S. Marks FL Bar #0750085