UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FLORIDA MEDICAL ASSOCIATION, INC., *et al.*,

        Plaintiffs,

vs.     Case No. 3:78-cv-00178-MMH-MCR

DEPARTMENT OF HEALTH, EDUCATION, & WELFARE, *et al.*,

        Defendants,

DOW JONES & COMPANY, INC., *et al.*

        Intervening Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Intervening Defendant Dow Jones and Company, Inc.'s Motion to Reopen Case (Doc. 7), Intervening Defendant Dow Jones and Company, Inc.'s Motion to Intervene (Doc. 1), and Intervening Defendants Jennifer D. Alley and Real Time Medical Data, LLC's Motion to Intervene (Doc. 20). For the reasons stated herein, it is respectfully recommended that the aforementioned Motions (Docs. 1, 7, 20) be granted.

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. § 636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

**I.      INTRODUCTION**

In 1979, the plaintiffs in this action, including the American Medical Association ("AMA"), successfully petitioned this Court to prohibit the government (now via the Centers for Medicare & Medicaid Services ("CMS"))[2] from disclosing the amount of taxpayer dollars individual doctors r0.0.eceive from Medicare reimbursements. See Florida Medical Association v. HEW, 479 F. Supp. 1291 (M.D. Fla. 1979).

Last year, Dow Jones & Company, Inc. ("Dow Jones"), publisher of *The Wall Street Journal (*the "*Journal"*), began to investigate Medicare fraud and the American healthcare system.  The *Journal* wanted to do an investigative series based on a set of databases known as the Limited Data Set Files (the "LDS Files"), which are maintained by CMS.  After a Freedom of Information Act ("FOIA") request that CMS denied, an ensuing FOIA lawsuit, and a protracted settlement; the *Journal* obtained access to a limited set of Medicare data.  That data, along with additional information and reporting, resulted in last year's *Journal* series, *Secrets of the System*.

Dow Jones now seeks to re-open the case and dissolve the 1979 Injunction. (Doc. 1).  Jennifer D. Alley and Real Time Medical Data, LLC (collectively "RTMD")[3] seek to intervene for the same purpose.  (Doc. 20).

---

[2]CMS is an agency of the Department of Health and Human Services ("HHS"), the renamed Department of Health, Education and Welfare ("HEW").

[3]RTMD is a commercial entity whose primary business is providing health care data to a targeted client base consisting of hospitals and other health care facilities. (Doc. 20, p. 4). RTMD utilizes Medicare claims data as part of the information that it tailors to its clients, in order to assist those clients with healthcare planning. RTMD's business is dependent on Medicare data that it receives via FOIA requests. (Id.).

**II.     BACKGROUND**

In 1977, HHS released a list of medical providers whose Medicare reimbursements totaled at least $100,000.00 during 1975 and announced plans to release 1977 reimbursement data. See Florida Medical Association, 479 F. Supp. at 1297. In 1979, however, the plaintiffs in this action successfully petitioned this Court for an order enjoining HHS from releasing annual Medicare payments to individually identified medical providers. Id. at 1311. This Court (Sr. District Judge Charles R. Scott) entered an injunction reasoning that such information was "exempt from required disclosure under the FOIA because it would constitute a 'clearly unwarranted invasion of personal privacy'" under 5 U.S.C. § 552(b)(6), and that HHS was "prohibited by the Privacy Act from disclosure, without the prior written consent of each affected individual." Id.

In 2009, the Eleventh Circuit ruled that this injunction is still in force and continues to bind HHS from releasing annual Medicare payments to individual medical providers.[4] Alley v. HHS, 590 F.3d 1195, 1199-1200 (11th Cir. 2009).[5] However, the

---

[4]It should be noted that in 2007, a D.C. district court ordered HHS to produce similar information in response to a FOIA request, finding that the interest in disclosure overwhelmed any privacy interests under FOIA Exemption 6 and the Privacy Act. Consumers' Checkbook v. HHS, 502 F. Supp. 2d 79, 85-86 (D.D.C. 2007). The D.C. Circuit reversed, in part, because the majority found that respondents had "not provided any evidence of alleged fraud the requested data would reveal" as to outweigh any alleged privacy interests. Consumers' Checkbook v. HHS, 554 F.3d 1046, 1049, 1054 (D.C. Cir. 2009). Yet one D.C. Circuit judge disagreed, noting that the information should be released even in the absence of direct evidence of fraud "because Medicare distributes extensive amounts of public funds, there is a special need for public oversight of HHS's activities in administering Medicare." Id. at 1059 (Rogers, J, J., concurring in part and dissenting in part) (internal quotations marks omitted).

[5]On January 11, 2007, RTMD filed suit against HHS in the Alabama District Court,
(continued...)

Court further held, if it is "believe[d] the FMA injunction is invalid, overly broad, or outdated, [it] can [be] challenge[d] in the Middle District of Florida after joining all necessary parties." Id. at 1210.

In 2009, the *Journal* and the non-profit Center for Public Integrity ("CPI") teamed up to investigate Medicare billings. As part of this partnership, the *Journal* and CPI drafted a FOIA request, submitted by CPI, requesting portions of the LDS Files. When HHS did not respond to the request, CPI filed a lawsuit under FOIA. The FOIA suit was voluntarily dismissed on January 27, 2010 due to settlement. As part of the settlement, Dow Jones purchased from CMS a portion of the LDS File which contained billings for a randomly selected 5% of Medicare recipients. (Doc. 1-B, ¶¶ 5-6). CMS agreed to disclose the LDS Files on the condition that Dow Jones sign a Data Use Agreement (the "Agreement") providing that it would not disseminate information derived from the LDS Files if the information could be used to deduce an individual doctor's identity. (Doc. 1-C, ¶ 17).

---

[5](...continued)
requesting preliminary and injunctive relief prohibiting HHS from withholding from RTMD the records requested pursuant to the FOIA and directing HHS to produce such records. On May 8, 2008, the Alabama District Court entered an Order granting partial summary judgment in favor of RTMD, finding that the 1979 Injunction did not apply to RTMD's FOIA requests and, further, that the requested data was not protected by Exemption 6. The Alabama District Court ordered HHS to release the requested data in response to RTMD's FOIA requests from that point forward. HHS appealed the decision to the Eleventh Circuit, arguing that the 1979 Injunction prevented disclosure of the data requested. On December 18, 2009, the Eleventh Circuit vacated the opinion of the Alabama court in Alley v. HHS, 590 F.3d 1195 (11th Cir. 2009), upholding the 1979 Injunction based solely on the appellate posture of the case. The Eleventh Circuit held that, under the U.S. Supreme Court's opinion in GTE Sylvania, Inc. v. Cons. Union of the U.S., Inc., 445 U.S. 375, 384 (1980), an injunction issued by one court against the disclosure of information may not be collaterally attacked in another court in a FOIA lawsuit seeking disclosure of that information. Alley, 590 F.3d at 1204-1205.

The *Journal*'s investigative series uncovered evidence of possible fraud and abuse in the Medicare system. Despite the success of the series, the limits imposed on the use of the LDS Files prevented the *Journal* from fully reporting what it uncovered, and uncovering more. Therefore, on January 25, 2011, Dow Jones filed the instant Motion to Intervene, seeking to dissolve the 1979 Injunction for the following reasons: (1) the Injunction limits the *Journal*'s ability to use the LDS Files; (2) in order to obtain the LDS Files, Dow Jones was required to sign an Agreement providing that it would not disseminate information that would identify an individual provider and the provider's Medicare reimbursements; and (3) the Injunction limits the *Journal*'s ability to fully report on its findings. Dow Jones is also petitioning the Court for declaratory and injunctive relief against HHS. (Doc. 1).

On April 18, 2011, Alley and RTMD also filed a Motion to Intervene in this action, seeking to dissolve the 1979 Injunction and to assert claims for declaratory and injunctive relief against HHS. (Doc. 20).

In response to Intervening Defendants' Motions, HHS takes no position as to whether Intervening Defendants should be permitted to intervene for the limited purpose of seeking relief from the 1979 Injunction. However, HHS opposes intervention for the purpose of bringing cross-claims seeking declaratory and injunctive relief. (Docs. 8, 33).

This case was referred to the undersigned for preparation of a Report and Recommendation regarding these pending Motions. (Doc. 13). On April 21, 2011, the

Court conducted a hearing on the matter. (Doc. 29). Accordingly, this matter is now ripe for judicial determination.

## III. ANALYSIS

### A. Motion to Reopen Case[6]

On February 4, 2011, Dow Jones filed a Motion to Reopen Case asking the Court to return this case to "active" status. (Doc. 7). In 2009, the Eleventh Circuit decided Alley, 590 F.3d 1195, which (among other things) articulated the procedural roadmap for those demanding greater access to Medicare data, and thus potentially needing to challenge the 1979 Injunction. Alley made clear that a "direct attack, instead of a collateral one, is the proper procedure," id. at 1204, and that this Court is the proper venue for seeking relief needed to acquire Medicare payment information covered by the 1979 Injunction.

Dow Jones accordingly moved to intervene in this case, served all the parties, and stated its intent to ask the Court to vacate the 1979 Injunction. Upon filing of the Motion to Intervene and associated papers, the docket for this case was placed on the Court's Electronic Case Filing ("ECF") system for the first time. However, ECF continues to show the case as having "closed" status. Dow Jones requests that the Court officially reopen the case to allow it to return to "active" status.

Because this request is unopposed and because Dow Jones followed the procedural roadmap set out by the Eleventh Circuit, this Court can see no reason why

---

[6]There is no opposition to this motion to the extent that it merely reopens the case from "inactive" to "active" status.

Dow Jones' request should be denied. According, the undersigned recommends Dow Jones' Motion to Reopen the Case (Doc. 7) be granted.

### B. Intervening Defendants' Motions to Intervene[7]

A party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989). If these requirements are met, the district court *must* allow the movant to intervene. Id. (emphasis added).

#### 1. Intervening Defendants' Motions to Intervene are timely

When considering a motion pursuant to Rule 24(a), the Court should assess timeliness based on all the surrounding circumstances, including (1) the length of time during which the intervenor knew or should have known of its interest in the case; (2) the extent of prejudice to existing parties as a result of the intervenor's failure to apply as soon as it knew or should have known of its interest; (3) the extent of prejudice to the would-be intervenor if its petition is denied; and (4) the existence of unusual circumstances militating either for or against the application being timely. See United

---

[7]There is no opposition to Intervening Defendants' Motions to Intervene for the limited purpose of seeking relief from the 1979 Injunction. See (Docs. 8, 33).

-7-

States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir.1983); Stallworth v. Monsanto Co., 558 F.2d 257, 264-66 (5th Cir. 1977).

Here, the Court finds Intervening Defendants' motions are timely. Although the injunction itself is over thirty years old, "nothing in Rule 24(a) precludes post judgment or even post-appeal intervention." Tweedle v. State Farm Fire & Cas. Co., 527 F.3d 664, 671 (8th Cir. 2008). Additionally, it was as recent as 2009 that this Circuit made clear that the 1979 Injunction still applies to FOIA requests for the LDS Files. Alley, 590 F.3d at 1204.[8]

Even assuming *arguendo* that there had been a substantial delay, no existing party would be prejudiced by intervention at this time as there has been no activity in this case for nearly thirty years. Additionally, the parties do not dispute whether Dow Jones and RTMD may intervene as a matter of right under Rule 24, and thus are not prejudiced by the timing of these Motions.

There are additional circumstances militating in favor of determining that the applications are timely. For example, both the Medicare data at issue and the reasons for protecting that data from disclosure may be outdated. In 1979, Medicare's primary function was to pay doctors for their services and the reimbursement system was geared toward that goal; thus, Medicare reimbursed doctors for "reasonable" charges that were not disclosed to the public and that were set, in part, by the doctors

---

[8]It is important to recognize that RTMD originally filed suit in the Alabama District Court, rather than challenging the 1979 Injunction in this Court. However, the Eleventh Circuit ruled otherwise, holding that RTMD was required to challenge the Injunction before the Middle District of Florida.

-8-

themselves in their own "discretion."  However, the Omnibus Budget Reconciliation Act of 1989 changed Medicare reimbursements from a generous "discretionary fee" system to a non-discretionary fee schedule that is public information.

This fundamental change in Medicare reimbursement may have eliminated the privacy interests that favored the physicians in <u>Florida Medical Association</u>.  Now that Medicare fees are set by Congress and are public information, disclosure of the requested data no longer exposes an individual doctor's "discretionary" billing practices to public scrutiny, or to comparison by competitors.  Additionally, today, the majority of physicians practice as corporate or business entities which, as a matter of law, have no privacy interest in the requested Medicare data.  Together, these changes may have altered the privacy interests that were at issue in <u>Florida Medical Association</u>.[9]

Therefore, in light of the foregoing, as well as the direction of Eleventh Circuit, Intervening Defendants have met all the elements of timeliness under Rule 24(a).[10]

### 2. Intervening Defendants have a direct interest in the subject matter of this action which can be protected only by intervention

Both Dow Jones and RTMD have attempted to access the LDS Files, and their requests have been circumscribed by the 1979 Injunction.  <u>See</u> <u>Alley</u>, 590 F.3d at

---

[9]Some additional changes include: The 1982 Medicare Utilization and Quality Control Peer Review Program (42 U.S.C. 1320c *et. seq.* and 42 U.S.C. 1395y(g)); The Deficit Reduction Act of 1984 (Public Law 98-369); and the 2003 Medicare Prescription Drug, Improvement and Modernization Act of 2003 (42 U.S.C. §1359cc-3(b)).

[10]Courts faced with similar injunctions have deemed timely motions to intervene filed decades after an injunction was entered.  <u>See</u>, <u>e.g.</u>, Moses v. Washington Parish Sch. Bd., 379 F.3d 319, 321 (5th Cir. 2004) (private school permitted to intervene in desegregation case to seek relief from 1974 injunction enjoining state from providing school with material aid).

1203-04.  Thus, both Intervening Defendants have an interest in the dissolution of the 1979 Injunction.  See John Doe No.1 v. Glickman, 256 F.3d 371, 380 (5th Cir. 2001) (FOIA requester entitled to intervene as of right in action designed to prevent the government from disclosing the relevant information); Campaign for Family Farms v. Glickman, 200 F.3d 1180, 1184 (8th Cir. 2000) (FOIA requester permitted to intervene as a defendant in reverse FOIA action).

Additionally, both Dow Jones and RTMD are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect" their interest in obtaining Medicare claims data.  See Chiles, 865 F.2d at 1212 n. 15.  Furthermore, the decision in Alley noted that petitioning this Court is the only method for challenging the 1979 Injunction and thus gaining access to the information contained in the LDS Files.  Alley, 590 F.3d at 1204.  Therefore, Intervening Defendants have a direct interest in the subject matter of this action which can be protected only by intervention.

### 3. Intervening Defendants' interest are not adequately represented by existing parties

Intervening Defendants interests are not "adequately represented by existing parties."  See Chiles, 865 F.2d at 1212 n.15.  Although HHS and Intervening Defendants would become co-defendants, their interests are in many ways adverse.  Indeed, in light of the 1979 Injunction, HHS has actively opposed release of similar information in subsequent litigation.  See Alley, 590 F.3d at 1200-01; Consumers' Checkbook v. HHS, 554 F.3d 1046 (D.C. Cir. 2009).

With regarding to Intervening Defendants' interests, Dow Jones represents the interests of a nationwide media organization, seeking to establish its rights to purchase Medicare information from HHS via contract, as well as to obtain Medicare data by means of a FOIA request.  In contrast, RTMD's interest is in the full disclosure of Medicare data, via the processing of FOIA requests, in order to provide benefit to its clients.  In light of the foregoing, Dow Jones and RTMD are not similarly situated to the point that either party could adequately represent the interests of the other.

Accordingly, the undersigned finds Intervening Defendants Dow Jones and RTMD have met all criteria pursuant to Rule 24(a) and recommends their Motions to Intervene (Docs. 1, 20) be granted.

### C.     Scope of the Intervention

As abovementioned, no party disputes that Intervening Defendants Dow Jones and RTMD may intervene as a matter of right under Rule 24(a).  While not opposing intervention for the purpose of dissolving the 1979 injunction, HHS contends that the Court should deny intervention for the purpose of bringing cross-claims seeking declaratory and injunctive relief.

The Court disagrees with HHS's contention and finds that limiting the scope of intervention at this time would require prejudging complex issues, which is procedurally improper and substantively unfounded.  See United States v. Exxon Corp., 773 F.2d 1240, 1306 (Temp. Emer. Ct. App. 1985) (holding that it is "very doubtful ... a court has the right to make significant inroads on the standing of an intervenor of right; and in particular, it should not be allowed to limit him in the assertion of counter-claims and

-11-

other new claims."). Where other courts have imposed limits on the scope of intervention, the limitations have been purely "reasonable conditions of a housekeeping nature." See Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 974 F.2d 450, 469 (4th Cir. 1992); see also Murphy v. Towmotor Corp., 642 F. Supp. 22, 24 (N.D. Ill. 1985).[11] HHS is not asking the Court to place conditions on intervention as a housekeeping matter; rather, it is requesting the Court dismiss Intervening Defendants' cross-claims. Such an inquiry is more properly considered on a motion to dismiss, not a motion to intervene.[12]

HHS argues that Intervening Defendants' cross-claims must be evaluated under Rule 24's standard for intervention, but this is not the test. The same standards for counter-claims and cross-claims by original parties "apply with full force to an intervenor of right under Rule 24(a)." Atlantis Dev. Corp. v. United States, 379 F.2d 818 (5th Cir. 1967). "Rule 13 directs that ... cross-claims may, be filed by any person entitled to file a pleading. So once intervention has been granted the intervener becomes a 'party',

---

[11] The only two cases HHS cites to the contrary are inapposite. (Doc. 8, p. 11). First, Southern v. Plumb Tools, 696 F.2d 1321, 1321-23 (11th Cir. 1983), was a diversity action that applied state law "requir[ing] conditions to be imposed on an intervening insurance company's participation at trial." Second, United States v. South Fla. Water Mgmt. Dist., 922 F.2d 704, 707 (11th Cir. 1991), merely contemplates "housekeeping" limitations. Id. at 710 n.9 (e.g., requiring intervenors to share a single set of documents, respond to interrogatories, or limit the number of counsel). Because the intervenor had an interest in only one of four counts, the intervention could be limited to that count or a separate trial could be ordered on the other counts. Id. at 711.

[12] Indeed, Dow Jones' Answer to Complaints of Florida Medical Association, Inc., et al. and American Medical Association, *et al.*; Cross-Claims for Declaratory and Equitable Relief; and Counter-Claim for Equitable Relief has not even been filed at this time. Rather, it is on the docket as an attachment to Dow Jones' Motion to Intervene. See (Doc. 1-A). Therefore, it is premature to dismiss claims not yet filed.

within the meaning of the Rules, 'entitled to litigate fully on the merits.'" Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141, 153 (S.D. Cal. 1954) (citations omitted).

HHS asks the Court to preemptively limit the intervention because HHS *may* be able to prevail on a future motion to dismiss. However, courts "should not resolve the motion for intervention by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face." Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999) (citations omitted). HHS cites no case in which a court limited intervention based on a prediction of whether a intervenor's claim might be successful,[13] but asks the Court to prejudge Intervening Defendants' cross-claims based on its idea of how they might be argued.[14]

Additionally, this Court should not reach the justiciability issues HHS raises at this stage, as they are premature. Furthermore, the specific venue requirements of the FOIA and the Privacy Act would not require dismissal, as suggested by HHS, since Intervening Defendants are not advancing a FOIA/Privacy Act claim. But even if such claims were asserted and could not otherwise be brought in this district, venue would still be proper under the pendant venue doctrine. See, e.g., Beattie v. U.S., 756 F.2d

---

[13]Anderson v. City of Alpharetta, 770 F.2d 1575, 1576, 1580 (11th Cir. 1985) (per curiam) is inapposite insofar as it denied intervention "for a multitude of reasons," including that putative intervenors' motions to intervene were not even before the court, and that they neglected to submit briefing as ordered. To be sure, the court also called their intervention "futile," but this reflected failure to even allege a legally-protectable interest in the action whatsoever, which no one has argued in the instant case. See (Doc. 8, p. 16).

[14]As Intervening Defendants' Motions to Intervene have not yet been granted, the parties may choose to modify their Answer before filing - all the more reason to wait until intervention is granted and the claims are properly filed before litigating them on the merits.

91, 101-02 (D.C. Cir. 1984) (courts may cure defects where venue is proper for one of several claims arising out of the same core of operative facts).

The Court need not wade into these brambles, which are far too complex to take up on (or serve as grounds to limit) intervention.  See Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.").  Therefore, the Court need not, and should not, preemptively decide the merits of this case.

## IV.   CONCLUSION

In sum, the undersigned recommends the Court reopen the above-captioned case and move it from "closed" to "active" status.  Additionally, the undersigned finds Intervening Defendants Dow Jones and RTMD have met all criteria pursuant to Rule 24(a) and recommends that their Motions to Intervene be granted in full.

Accordingly, after due consideration, it is respectfully

**RECOMMENDED:**

1.   Intervening Defendant Dow Jones and Company, Inc.'s Motion to Reopen Case (Doc. 7) be **GRANTED.**

2.   Intervening Defendant Dow Jones and Company, Inc.'s Motion to Intervene (Doc. 1) be **GRANTED.**

3.   Intervening Defendant Jennifer D. Alley and Real Time Medical Data, LLC's Motion to Intervene (Doc. 20) be **GRANTED.**

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  18th  day of May, 2011.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
    United States District Judge

Counsel of Record