**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FLORIDA MEDICAL ASSOCIATION,
INC., et al.,

        Plaintiffs,

vs.                                  Case No. 3:78-cv-178-J-34MCR

DEPARTMENT OF HEALTH, EDUCATION,
& WELFARE, et al.,

        Defendants,

DOW JONES & COMPANY, INC., et al.,

        Intervening Defendants.

_____

**ORDER**

    This case is before the Court on Dow Jones & Company, Inc.'s Motion to Reopen

Case (Doc. 7; Dow Jones' Motion to Reopen), Dow Jones & Company, Inc.'s Motion to

Intervene (Doc. 1; Dow Jones' Motion to Intervene), and Jennifer D. Alley and Real Time

Medical Data, L.L.C.'s ("RTMD") Motion to Intervene.  (Doc. 20; RTMD's Motion to

Intervene).[1] The motions were referred to the Honorable Monte C. Richardson, United States

Magistrate Judge, for a Report and Recommendation regarding an appropriate resolution of

the motions.  (Doc. 13; 3/01/11 Order).  On May 18, 2011, the Magistrate Judge entered a

_____

[1] Defendant Department of Health and Human Services ("HHS") filed responses to the Motions
to Intervene. Specifically, HHS filed Partial Opposition of Defendants Department of Health and Human
Services and Kathleen Sebelius to Dow Jones & Company, Inc.'s Motion to Intervene (Doc. 8; HHS
Response to Dow Jones' Motion to Intervene).  Additionally, Dow Jones filed Dow Jones' Reply in
Support of Motion to Intervene (Doc. 15; Dow Jones' Reply), and Dow Jones' Notice of Supplemental
Exhibits. (Doc. 19). HHS also filed its Partial Opposition of Defendants Department of Health and Human
Services and Kathleen Sebelius to Motion to Intervene by Jennifer D. Alley and Real Time Medical Data,
L.L.C.  (Doc. 33; HHS Response to RTMD Motion to Intervene).

Report and Recommendation (Doc. 37; Report), recommending that Dow Jones' Motion to Intervene, Dow Jones' Motion to Reopen, and RTMD's Motion to Intervene all be granted in full, including permitting the proposed intervenors to assert cross-claims and counterclaims. Report at 14. Thereafter, plaintiffs American Medical Association ("AMA") and Florida Medical Association ("FMA") filed AMA's and FMA's Limited Objections to May 18 Report and Recommendation (Doc. 39; AMA and FMA Objections), and HHS filed the Objection of Defendants Department of Health and Human Services and Kathleen Sebelius to Magistrate Judge's Report and Recommendation. (Doc. 40; HHS Objections). Proposed intervenors Jennifer D. Alley and RTMD filed an Opposition to AMA's and FMA's Limited Objections to May 18 Report and Recommendation (Doc. 41; RTMD Response to AMA and FMA Objections), and proposed intervenor Dow Jones filed Dow Jones & Company, Inc.'s Opposition HHS's Objections to Magistrate Judge's Report and Recommendation. (Doc. 42; Dow Jones' Response to HHS Objection).

## I.   **Standard of Review**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). The district court must review legal conclusions de novo, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at *1 (M.D. Fla. May 14, 2007).

## II.    Background[2]

### A.    The 1979 FMA Injunction

This case was initiated in 1978 by plaintiff FMA, on behalf of their physician members, and later joined by the AMA, seeking to enjoin the Secretary of the Department of Health, Education and Welfare ("HEW"), HHS' predecessor,[3] from disclosing information concerning the annual amounts of reimbursements paid to Medicare providers in a way that would disclose the identity of the providers.  The Eleventh Circuit, in the case Alley v. U.S. Dep't of Health and Human Servs, 590 F.3d 1195 (11th Cir. 2009), set forth the history of this action as follows:

> The story of [this] case starts in March 1977, when the Secretary of . . . [HEW], the agency responsible for administering Medicare, made public a list of physicians and groups of physicians who in 1975 received $100,000.00 or more in reimbursements for providing Medicare services. [Fla. Medical Ass'n, Inc. v. Dep't of Health, Education & Welfare, 479 F. Supp. 1291, 1297 (M.D. Fla. 1979)("FMA").]  The disclosure included the gross amounts of reimbursement received by each provider. Id.  The information was widely publicized in the news media, and "it was later determined that the information published was inaccurate in many ways."  Id.  In November 1977 the Secretary directed various carriers to prepare and publish another list, this time of all providers paid Medicare reimbursements in 1977. Id.  "The list was to include full names of the physicians and providers, their addresses, the net total amount of Medicare reimbursement paid [directly] . . . to each physician or provider, and the net total

---

[2]   The Magistrate Judge set forth the following facts which have not drawn any objections from the parties or the proposed intervenors.  See Report at 2-6.  The Court adopts these facts, and supplements them to the extent necessary to provide context for the Court's resolution of legal issues raised by the Report and the parties' objections.

[3]   The Department of Health, Education, and Welfare ("HEW") has been re-designated the Department of Health and Human Services ("HHS"), and the Secretary of HEW has been re-designated Secretary of HHS, pursuant to 20 U.S.C. § 3508.  Kathleen Sebelius, Secretary of HHS, is substituted as a Defendant in her official capacity, pursuant to Rule 25(d), Federal Rules of Civil Procedure.

> amount of Medicare reimbursements paid to beneficiaries for . . . services furnished by each physician or provider." Id.

Alley, 590 F.3d at 1198. Plaintiff FMA and six individual physicians, on behalf of all Florida physicians whose patients were Medicare beneficiaries, brought this class action to enjoin the scheduled disclosures. Id. at 1198-99. The AMA intervened as a plaintiff representing more than 200,000 licensed physician members nationwide, and the class of plaintiffs was recertified to include all physicians licensed to practice in Florida and all members of the AMA, if they were providers of Medicare services and would be individually identified by the disclosure of annual Medicare reimbursement amounts. Id. at 1199. The plaintiffs claimed that the then-impending disclosures were not required by the Freedom of Information Act ("FOIA"), citing to Exemption 6 which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); see Alley, 590 F.3d at 1999. Plaintiffs also contended that the proposed disclosures would violate the Privacy Act, 5 U.S.C. § 522a. Id.

Examining competing public and private interests, the Court, Senior District Judge Charles R. Scott, determined on October 22, 1979, that the proposed disclosure, "at least in the individually identifying manner," was covered by FOIA Exemption 6, and that the proposed disclosure would violate the Privacy Act. FMA, 479 F. Supp. at 1305. Specifically, the Court determined that:

> the Secretary's proposed disclosure of a list of annual reimbursements to individually identified providers of services under the Medicare Act (1) is exempt from required disclosure under the FOIA because it would "constitute a clearly unwarranted invasion of personal privacy"; (2) is prohibited by the Privacy Act from disclosure, without the prior written consent of each affected individual; and (3) if the guidelines and

> regulations . . . would otherwise authorize such disclosure, they
> are contrary to the Privacy Act and without force and effect.

Id. at 1311.  That same day, the Court issued a Final Declaratory Judgment and Permanent

Injunction which:

> 1. . . . permanently enjoined [HEW] from disclosing any list
> of annual Medicare reimbursement amounts, for any years,
> which would personally and individually identify those providers
> of services under the Medicare program who are members of the
> recertified class in this case.
>
> 2.    Any such disclosure of annual Medicare
> reimbursement amounts, for any years, in manner that would
> personally and individually identify the providers of services
> under the Medicare program who are members of the recertified
> class in this case is declared to be contrary to federal law.

Fla. Medical Ass'n, Inc. v. Dep't of Health, Education & Welfare, No. 78-178 (M.D. Fla. Oct.

22, 1979)("1979 FMA Injunction").[4]

**B.    Proposed Intervenors Jennifer D. Alley and Real Time Medical Data, L.L.C.**

Proposed intervenor Jennifer Alley is the owner of proposed intervenor RTMD, a

"business that uses Medicare claims data to assist hospitals and other clients with their

marketing and strategic planning efforts."  Alley, 590 F.3d at 1200; see also (Doc. 20-1; Alley

Decl. ¶ 3).  In 2003, Alley filed a FOIA request with HHS seeking disclosure of data regarding

all Medicare claims paid in 2002 for procedures performed in Florida, Georgia, Mississippi

and Tennessee, specifically Current Procedural Terminology (CPT) codes for each medical

---

[4]   The 1979 FMA Injunction was clarified on December 2, 1982, on HHS's (formerly HEW)
motion to construe and/or modify.  The Court construed the 1979 FMA Injunction "not to prohibit
disclosure" by HHS of Medicare payment information to law enforcement agencies "with respect to
physicians who are suspected of unlawful acts where disclosure of such information is required for law
enforcement purposes," as authorized under 5 U.S.C. § 552a(b)(7).

service and procedure for which Medicare had paid a claim, as well as the physician's name and address.  See Alley, 590 F.3d at 1200; Alley Decl. ¶ 10.  The agency denied the request, and after having exhausted her administrative remedies, Alley filed a FOIA lawsuit in January 2007, in the United States District Court, Northern District of Alabama, seeking to compel HHS to disclose the requested records. Alley, 590 F.3d at 1198, 1200; Alley Decl. ¶¶ 10-17. In response to Alley and RTMD's Complaint, HHS asserted that the documents requested were exempt from disclosure under Exemption 6 of FOIA, and "to avoid running afoul of the 1979 FMA decision."  Alley, 590 F.3d at 1200-01; Alley Decl. ¶ 18.  The Alabama District Court concluded that this Court's 1979 FMA injunction did not apply to the records sought by Alley and RTMD, that "disclosure would not constitute a clearly unwarranted invasion of privacy under Exemption 6," and, as such, ordered HHS to disclose the documents requested.  Alley, 590 F.3d at 1201.

HHS appealed, and on December 18, 2009, the Eleventh Circuit reversed the trial court. Citing GTE Sylvania, Inc. v. Consumers Union of U.S., Inc., 445 U.S. 375, 387 (1980), the court noted that "an agency does not improperly withhold information when a federal district court has enjoined the agency from disclosing the information."  Alley, 590 F.3d at 1203.  In accordance with the Supreme Court's GTE Sylvania decision, the court stated that "an injunction issued by one court against the disclosure of information may not be collaterally attacked in another court in a FOIA lawsuit seeking disclosure of that information." Id. at 1203.  Instead, "the appropriate forum in which to challenge the validity of the order is the district court that issued it."  Id. at 1204 (citing Wagar v. U.S. Dep't of Justice, 846 F.2d

1040, 1047 (6th Cir. 1988)).  Following these principles, the Eleventh Circuit provided the following procedural roadmap for this case:

> The rule that a FOIA lawsuit may not be used to collaterally attack an injunction prohibiting disclosure of certain records does not mean there is no remedy for the party seeking these records. It means that the party must first succeed in having the issuing court modify or vacate the injunction barring disclosure.  If that court refuses, the party may appeal that refusal.  A direct attack, instead of a collateral one, is the proper procedure.

Id.  The Eleventh Circuit further stated that if Alley wishes to raise issues regarding whether the 1979 FMA Injunction should be vacated or modified, "she can do so before the United States District Court for the Middle District of Florida in a proceeding to alter or vacate the injunction; we will not decide those issues here."  Id. at 1209-10.

### C.   Proposed Intervenor Dow Jones & Company, Inc.

Dow Jones is the publisher of The Wall Street Journal, a nationally distributed newspaper.  Dow Jones alleges in its Motion to Intervene that in 2009, the Journal began working with a nonprofit journalism organization, Center for Public Integrity ("CPI"), to investigate Medicare data, known as the Limited Data Set Files ("LDS Files"), maintained by the Centers for Medicare & Medicaid Services ("CMS"), an HHS agency.  The Journal sought access to the Carrier Standard Analytic File ("Carrier File"), a subset of the LDS Files, described as an "enormous database" which "contains information about the direct billings of and reimbursements to individual providers."  Dow Jones' Motion to Intervene at 2, 8; (see also Doc. 1-2; Allen Decl. ¶¶ 2, 3, 5; Doc. 1-3; Tamman Decl. ¶¶ 2, 3).  According to Dow Jones, the Carrier File has "essentially limitless potential to help expose fraud, waste, and abuse in the Medicare system."  Allen Decl. ¶ 3.

In June 2009, CPI submitted a FOIA request to HHS, requesting portions of the LDS Files.  When HHS did not respond to the request, CPI filed a lawsuit in the United States District Court for the District of Columbia under FOIA to obtain the information.  Allen Decl. ¶¶ 5, 6; Tamman Decl. ¶¶ 5, 6; HHS Response to Dow Jones' Motion to Intervene at 8.  The parties voluntarily dismissed the FOIA suit on January 27, 2010, after reaching a settlement.  Allen Decl. ¶ 6.  As part of the settlement, "Dow Jones and CPI were able to negotiate to purchase from HHS a portion of the Carrier File which contained all billings for a randomly selected 5% of Medicare recipients," and some other sample files, pursuant to a standardized Data Use Agreement ("Agreement") with CMS, signed by Dow Jones and CPI.  The Agreement provided that "Dow Jones would not disseminate information derived from the LDS Files if the information could be reasonably used to deduce an individual doctor's identity."  Allen Decl. ¶¶ 6, 7; Tamman Decl. ¶¶ 8, 9; <u>see</u> (Doc. 1-3 at 24; Agreement).  The Agreement further provided that Dow Jones could "challenge, at any time in the future, the legal basis for denying public access to, or prohibiting dissemination of, information derived from the files [specified] . . . or any other information."  Agreement, Attachment A, ¶ A-4; <u>see also</u> Allen Decl. ¶ 7; Tamman Decl. ¶ 18.  Based upon the information it was able to obtain, the <u>Wall Street Journal</u> published a series of articles about Medicare between April and December, 2010, touching upon possible fraud, waste, and abuse by Medicare providers.  Allen Decl. ¶¶ 8-10; Tamman Decl. ¶¶ 10, 11; (Doc. 1-3; Schoofs Decl. ¶¶ 2-6).  Subsequent articles relating to the series were published between February 2011 and April 2011.  (Doc. 19; Dow Jones Supplemental Exhibits).  Dow Jones contends that the 1979 <u>FMA</u> Injunction caused HHS to limit access to data from the LDS Files, which interfered with, and continues

to interfere with the <u>Journal's</u> reporting on Medicare.  Allen Decl. ¶¶ 15-18, 21, 22, 25; <u>see also</u> Tamman Decl. ¶¶ 6, 12-16; Schoofs Decl. ¶¶ 7–28.[5]

### D. <u>Motions to Intervene</u>

On January 25, 2011, Dow Jones filed its Motion to Intervene pursuant to Rule 24, Federal Rules of Civil Procedure (Rule(s)), "to vacate a permanent injunction issued by this Court" in 1979.  Dow Jones' Motion to Intervene at 1.  Dow Jones seeks to intervene, to file a proposed answer, cross-claims and counterclaims which it attaches to its motion, and permission to "otherwise fully participate in this case."  <u>Id.</u> at 25.  In addition to the proposed answer to the FMA Complaint and AMA Intervening Complaint, (Doc. 1-1; Dow Jones' Answer), Dow Jones submitted three proposed cross-claims against Defendant HHS, and a proposed counterclaim against Plaintiffs FMA and AMA, all seeking Declaratory Judgments.  (Doc. 1-1 at 8; Dow Jones Cross-Claims and Counter-Claim).   Dow Jones alleged that its proposed Cross-Claims and Counter-Claim all arise under FOIA and the Privacy Act.  In its proposed First Cross-Claim Against HHS, Dow Jones seeks a declaratory judgment that "[t]he patient-anonymized Carrier File and other LDS Files must be released under FOIA, and that the Privacy Act does not prohibit HHS from releasing the complete data or require it to impose restrictions on naming individual providers."  (Doc. 1-1 at 16-17; Dow Jones' First Cross-Claim).  In the Second Cross-Claim Against HHS, Dow Jones seeks a declaratory judgment declaring that "all conditions precedent to the release of Carrier File and other LDS Files, as imposed by the Data Use Agreement between HHS and Dow Jones,

---

[5]   Dow Jones alleges that "[t]he <u>Journal</u> is engaged in further investigation and reporting on potential Medicare waste, abuse, and fraud, but the 1979 Injunction continues to significantly restrict its ability to gather information and report on what i[t] has uncovered."  Dow Jones' Motion to Reopen at 2-3.

have been satisfied." (Doc. 1-1 at 17-18; Dow Jones' Second Cross-Claim). In its Third Cross-Claim against HHS, which Dow Jones also labels as a Counter-Claim against all Plaintiffs, Dow Jones seeks a "judgment dissolving the 1979 injunction in its entirety and ordering HHS to produce the patient-anonymized Carrier File and other LDS Files in their entirety; and for such other relief as the Court deems just and proper." (Doc. 1-1 at 18-19; Dow Jones' Third Cross-Claim and Counter-Claim).

Dow Jones filed its Motion to Reopen on February 4, 2011, asking the Court to reopen the case and "move it from 'closed' to 'active' status," "based on the procedural roadmap" set out by the Eleventh Circuit in Alley, supra, and citing to its Motion to Intervene filed the previous week. Dow Jones' Motion to Reopen at 1. Dow Jones states that the "Motion to Reopen responds to instruction from the clerk of court's office in the wake of Dow Jones' recent filing seeking to reanimate this long-closed case for purposes of having the Court revisit a permanent injunction." Id. at 2.

Alley and RTMD (collectively "RTMD"), filed their Motion to Intervene on April 18, 2011, in which they seek intervention as a matter of right pursuant to Rule 24(a)(2)(and alternatively permissive intervention pursuant to Rule 24(b)(2)), "as directed by the Eleventh Circuit," "in order to vacate a permanent injunction" entered by the Court in 1979. RTMD Motion to Intervene at 1, 4, 8–15. RTMD seeks disclosure of Medicare Part B reimbursement data, which RTMD contends its "clients use . . . to understand the operations and activities of Medicare reimbursements, and to make decisions which directly impact the level of services that these health care entities can afford to provide to the public." Id. at 2, 5 (citing Alley Decl. ¶¶ 3-4, 14). RTMD states that following the Eleventh Circuit's Alley 2009

decision, the <u>Alley</u> case was remanded to the Alabama District Court, and litigation continued regarding whether "the  portion of the requested [Medicare] data that is <u>not</u> the subject of the <u>FMA</u> injunction [is] 'reasonably segregable' from the portion that is." <u>Alley v. U.S. Dep't of Health and Human Servs.</u>, No. CV-07-BE-0096-E (N.D. Ala. March 30, 2011)(Doc. 139; M.D. Ala. Memorandum Opinion at 7)(emphasis in original).  The Alabama District Court held on March 30, 2011, that "the data requested falling outside the <u>FMA</u> injunction is not reasonably segregable from the data enjoined by it," <u>id.</u> at 9, and dismissed the action.  <u>Id.</u> at 10; <u>see also id.</u> (Doc. 140; M.D. Ala. Final Order); RTMD Motion to Intervene at 7.  RTMD argues that the Medicare Part B data that it seeks is different from the data sought by Dow Jones in its Motion to Intervene, and thus, Dow Jones and RTMD are not "similarly situated to the point that either party could adequately represent the interests of the other."  <u>Id.</u> at 14.

RTMD also filed an Answer to FMA's and AMA's Complaints, which included Cross-Claims for declaratory and equitable relief against HHS, and a Counter-Claim for equitable relief against Plaintiffs.  (Doc. 21; RTMD Answer).  As with Dow Jones, RTMD alleges that its Cross-Claims and Counter-Claim arise under FOIA and the Privacy Act.  <u>Id.</u> at 7.  In its First Cross-Claim against HHS, RTMD seeks a "judgment declaring that RTMD's requested Medicare Part B data must be released in response to RTMD's FOIA requests, and that the Privacy Act does not prohibit HHS from releasing the complete data or require it to impose any restrictions upon the disclosure of this data.  (Doc. 21 at 10-11; RTMD First Cross-Claim).  In its Second Cross-Claim against HHS and Counter-Claim against All Plaintiffs, RTMD "prays for judgment dissolving the 1979 <u>FMA</u> Injunction in its entirety, and ordering HHS to produce the requested Medicare Part B data regarding any and all states for which

RTMD requests such information." (Doc. 21 at 11; RTMD Second Cross-Claim and Counter-Cclaim).

Defendant HHS filed its "Partial Opposition" to the two Motions to Intervene, declining to take any position on whether the proposed intervenors "should be permitted to intervene for the limited purpose of seeking relief from the October 1979 permanent injunction under Rule 60(b) of the Federal Rules of Civil Procedure, but . . . oppos[ing] intervention for any other purpose, including bringing new, unrelated claims against HHS." HHS Response to Dow Jones' Motion to Intervene at 1; see also id. at 11-12, 16–20[6]; see also HHS Response to RTMD Motion to Intervene at 1. HHS argues that the proposed cross-claims and counter-claims which assert "new claims" are not timely; not related to the original claims in this action; and futile based upon lack of subject matter jurisdiction, improper venue, and failure to state a claim. HHS Response to Dow Jones' Motion to Intervene at 2, 16-20; HHS Response to RTMD Motion to Intervene at 15, 17–20. As to Dow Jones, HHS argues that the documents sought by Dow Jones are governed by the Data Use Agreement. HHS Response to Dow Jones' Motion to Intervene at 2. As to RTMD, HHS contends that its claims are "legally barred" by the completed litigation in the Alabama District Court. HHS Response to RTMD's Motion to Intervene at 1-2, 16-17.

Plaintiffs FMA and AMA did not file any response in opposition to the two Motions to Intervene, and no party opposed Dow Jones' Motion to Reopen.

---

[6] Specifically, as to Dow Jones, "HHS takes no position on whether Dow Jones has followed appropriate procedures in seeking to reopen this 32-year old case for the purpose of seeking Rule 60(b) relief, whether Dow Jones has satisfied the requirements for intervention for the purpose of seeking Rule 60(b) relief, or whether, if permitted to intervene, Dow Jones would be the proper party to seek Rule 60(b) relief." HHS Response to Dow Jones' Motion to Intervene at 12; see also HHS Response to RTMD Motion to Intervene at 11 (same position as to RTMD).

### III.   The Report and Recommendation

Noting that Dow Jones' Motion to Reopen is unopposed, and that the Eleventh Circuit in "Alley made clear that a 'direct attack, instead of a collateral one, is the proper procedure'" for seeking to vacate or modify the 1979 FMA Injunction, the Magistrate Judge recommends that the Motion to Reopen be granted.   Report at 6-7.   No party objects to this recommendation.

In recommending that Dow Jones' and RTMD's Motions to Intervene be granted, the Magistrate Judge assumed that the proposed intervenors were seeking to intervene as of right, pursuant to Rule 24(a)(2), Federal Rules of Civil Procedure.  Report at 7.  Applying the four factors of analysis for intervention as of right, see Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989), the Magistrate Judge determined first that the motions were timely "based on all the surrounding circumstances."  Report at 7–9.  Combining the second and third factors, the Magistrate Judge found that the proposed intervenors "have a direct interest in the subject matter of this action which can be protected only by intervention," and that they are "'so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect' their interest in obtaining Medicare claims data."  Id. at 9-10 (citing Chiles, 865 F.3d at 1212 n.15).  Indeed, the Magistrate Judge noted that the Eleventh Circuit, in Alley, advised that "petitioning this Court is the only method for challenging the 1979 injunction . . . ."  Report at 10 (citing Alley, 590 F.3d at 1204).  As to the fourth factor, the Magistrate Judge found that intervention as of right was warranted because the proposed intervening Defendants are not adequately represented by the existing parties.  Id. at 10-11.

The Magistrate Judge also recommended that the proposed intervenors be permitted to assert their proposed Cross-Claims and Counter-Claims because "limiting the scope of intervention at this time would require prejudging complex issues, which is procedurally improper and substantively unfounded." Id. at 11-14.

## IV.   **The Parties' Objections**

Plaintiffs FMA and AMA, filed "Limited Objections" to the Report.  While Plaintiffs do not oppose the pending Motions to Intervene and the Motion to Reopen, they do object to "six specific statements in the Report."  AMA and FMA Objections at 1-2; see also id. 2-8.  These statements are found in the Magistrate Judge's analysis of the timeliness of proposed intervenors' Motions to Intervene.  See Report at 8-9.[7]  Proposed intervenors' Alley and

---

[7]   The six "statements" objected to are:

1.      The Report states: "In 1979, Medicare's primary function was to pay doctors for their services and the reimbursement system was geared toward that goal."  Report at 8.  FMA and AMA contend that this statement "implies that this is no longer the case," and that such a "factual finding" about the "primary function" of Medicare is not supported by facts in the record.  AMA and FMA Objections at 3.

2.      The Report states that the amount of reimbursement in 1979 was "set in part, by the doctors themselves in their own 'discretion,'" and that the 1979 reimbursements were based upon "a generous 'discretionary fee' system."  Report at 9.  FMA and AMA contend that "[t]his factual finding is unsupported by the record and is incorrect."  AMA and FMA Objections at 4.

3.      The Report states that the 1979 reimbursements for charges to doctors pursuant to Medicare "were not disclosed to the public," Report at 8, and that currently, Medicare reimbursements are based upon "a non-discretionary fee schedule that is public information."  Id. at 9.  FMA and AMA argue that this statement "implies that, in 1979, the revenues of a physician from Medicare were not generally known, but that these revenues are now 'public information.'"  AMA and FMA Objections at 5.  They contend that this "factual finding" is not supported by the record and is "false."  Id.

4.      The Report finds that "This fundamental change in Medicare reimbursement may have eliminated the privacy interests that favored the physicians in Florida Medical Association."  Report at 9.  FMA and AMA object to this statement as a "legal conclusion" which is "improper and incorrect."  AMA and FMA Objections at 5.  They contend that the parties have not "submitted argument on the relevance of changes in the Medicare reimbursement system to the 1979 injunction," and that the issue is "not germane to the motions for intervention."  Id. at 6.

(continued...)

RTMD responded in opposition noting that the AMA's objections do not "undermine or preclude the intervention of RTMD and Dow Jones," inasmuch as the FMA and AMA object only to "the Report's minimal findings regarding changes in the purpose, structure and function of the Medicare reimbursement system that have taken place since 1979." RTMD Response to AMA and FMA Objections at 1-2.

HHS objects to the Report "to the extent that it suggests that potential intervenors . . . [Dow Jones and RTMD] should be permitted to introduce additional new claims into this 32-year old case." HHS Objection at 1. HHS does not object to intervention "for the limited purpose of making requests under Rule 60(b), Federal Rules of Civil Procedure for dissolution of the permanent injunction," but argues that intervention should be confined to this issue and not expanded in scope to permit the "new" Cross-Claims and Counter-Claims proposed by Dow Jones and RTMD. Id. Dow Jones responds that its "cross-claims must be permitted because they arise from the same case or controversy as its request to vacate the 1979 injunction," Dow Jones' Response to HHS Objection at 2, arising from "[t]he 'same operative facts,'" and thus satisfying the Rule 13(g) requirements for cross-claims. Id. at 9 (citing Fed. R. Civ. P. 13(g)). Dow Jones notes that neither party challenges whether it should be permitted to intervene as of a matter of right under Rule 24(a). Id. at 1, 6. It

---

[7](...continued)
5.      The Report states: that "today, the majority of physicians practice as corporate or business entities." Report at 9. AMA and FMA object, saying that the statement "implies" that this fact is a material and dispositive change since the entry of the 1979 FMA Injunction. They contend that the finding is unsupported by the record and "incorrect." AMA and FMA Objections at 6.

6.      The Report states that physicians practice as corporate or business entities, "which, as a matter of law, have no privacy interest in the requested Medicare data." Report at 9. FMA and AMA object that this represents a "legal conclusion" that is "incorrect," and that the legal question has not been briefed by the parties. AMA and FMA Objections at 7.

argues that because "HHS concedes Dow Jones' intervention to challenge the 1979 Injunction is timely, a fortiori, its cross-claim for declaratory relief on the same subject must be as well," and that once Dow Jones is deemed a "party" to the litigation through intervention as of right, it is entitled "to litigate fully on the merits." Id. at 10 (citations and internal quotations omitted).  Additionally, Dow Jones argues that any attempt to limit or prohibit its proposed Cross-Claims amounts to a premature consideration of its claims on the merits. Id. at 13-17.   Underpinning its rationale is Dow Jones' conclusion that "[i]f the 1979 Declaratory Judgment and Permanent Injunction was vacated, HHS would have no basis to withhold the LDS Files or impose conditions on their dissemination." Id. at 8 (emphasis in original).

## V.   Discussion

The Court turns now to consideration of the parties' motions and the objections to the Report.

### A.   Standards for Intervention

"A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." Chiles, 865 F.2d at 1213.[8]

---

[8]   A party seeking permissive intervention pursuant to Rule 24(b)(2), Federal Rules of Civil Procedure, "must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." Chiles, 865 F.2d at 1213.  The district court has the discretion to deny permissive intervention even if both requirements are met. Id.  The parties and the Magistrate Judge have proceeded as though the potential intervenors may intervene as of right.

(continued...)

Once a party establishes all of the prerequisites to intervention as a matter of right, "the trial court has no discretion to deny the intervention." Loyd v. Ala. Dep't of Corrections, 176 F.3d 1336, 1340-41 (11th Cir. 1999); see also Purcell v. Bankatlantic Fin. Corp., 85 F.3d 1508, 1512 (11th Cir. 1996).   Moreover, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." Fed. Savings and Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993).

## 1.   Timeliness

In determining whether a motion to intervene is timely, the Court must consider

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242,1259 (11th Cir. 2002)(citing Chiles, 865 F.2d at 1213).[9]   No party has challenged the timeliness of the Motions to Intervene. However, as Plaintiffs FMA and AMA do object to a series of findings made by the Magistrate Judge in conjunction with his determination, the Court reviews the timeliness analysis.

_____

[8](...continued)
Even if Dow Jones and RTMD should more properly be considered as seeking permissive intervention, the Court will consider their motions under the more stringent standards applicable to intervention as of right.  The results in this case would be the same under the more discretionary permissive intervention standards.

[9]   This analysis applies whether intervention of right or permissive intervention under Rule 24 is claimed.  United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir. 1983).

As to the first factor, although the 1979 <u>FMA</u> Injunction has been in existence for 32 years, the proposed intervenors have established that they have not been dilatory in seeking to intervene for the purpose of seeking vacatur or modification of the injunction in order to protect their interests.  In the Eleventh Circuit's December 2009 <u>Alley</u> decision, the court interpreted the 1979 <u>FMA</u> Injunction as having a broad reach, and instructed that any challenge to the injunction must be brought in the context of this case.  <u>Alley</u>, 590 F.3d at 1204-05, 1210.  Following remand to the Alabama District Court, RTMD attempted to obtain certain Medicare documents, even applying the Eleventh Circuit's interpretation of the <u>FMA</u> Injunction.   The Alabama District Court rejected these efforts in a March 30, 2011 Memorandum Opinion granting summary judgment in favor if HHS.  RTMD filed the Motion to Intervene in this case, following the Eleventh Circuit's procedural roadmap, on April 18, 2011.

Likewise, Dow Jones entered into its Agreement with CMS, an agency of HHS, on January 27, 2010, as part of a settlement of the District of Columbia FOIA lawsuit, in order to gain limited access to some Medicare documents.  Dow Jones, through the <u>Wall Street Journal</u>, began publishing articles related to Medicare, utilizing the data it was able to obtain in April, 2010.  The <u>Journal</u> has continued to publish Medicare-related articles, even after its January 25, 2011 Motion to Intervene, and contends that the 1979 <u>FMA</u> Injunction interferes with its ability to investigate and fully report on Medicare issues.

This case presents unusual circumstances.  These include the Eleventh Circuit's recent decision in <u>Alley</u>, and the important questions raised by the proposed intervenors - whether Medicare records which identify Medicare providers' income, should remain

protected by the 1979 <u>FMA</u> Injunction and its application of the Privacy Act and the privacy exemption to FOIA, given the alleged change in circumstances underpinning that injunction.[10] These circumstances militate in favor of a determination that the Motions to Intervene are timely.  Indeed, there appear to be no circumstances weighing against intervention.  <u>See Howard v. McLucas</u>, 782 F.2d 956, 960 (11th Cir. 1986).  Moreover, the Plaintiffs and Defendants do not argue that they will be prejudiced by intervention to challenge the continuing propriety of the 1979 <u>FMA</u> Injunction.

In making its determination that intervention is warranted, the Court declines to adopt the Magistrate Judge's specific findings and observations regarding the "additional circumstances militating in favor of determining that the applications are timely."  Report at 8-9.  Determinations of the "primary function" of Medicare; comparisons of the Medicare reimbursement procedures in 1979 and today; and a finding that today's physicians practice as corporate or business entities and have no privacy interest in the requested Medicare data "as a matter" of law," <u>id.</u> at 8-9, are beyond the scope of the issues presented by the Motions to Intervene and are not sufficiently supported, at this time, by evidence in the record. Rather, these are issues to be developed by the parties and determined by the Court in the

_____

[10]  The Eleventh Circuit characterized the unusual circumstances of this case in more general terms:

> Maybe the rationale behind that injunction has faded enough with time that it should be modified or vacated.  Maybe not.  Perhaps, as Alley also contends, a "fundamental shift in Medicare's purpose, as well as dramatic increases in the number of Medicare participants," have bolstered the public interests favoring disclosure.  Perhaps not.  If Alley wants to raise those issues, she can do so before the United States District Court for the Middle District of Florida in a proceeding to alter or vacate the injunction . . . .

<u>Alley</u>, 590 F.3d at 1509-10.

context of assessing the continued viability of the 1979 FMA Injunction, based upon a fully developed record of evidence and legal argument.  See Turn Key Gaming, Inc. v Oglala Sioux Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999)("[a]n application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face"); Adams Offshore, Ltd. v. Con-Dive, LLC, No. 09-0378-WS-B, 2009 WL 2971103, at *1 (S.D. Ala. Sept. 14, 2009)(same).  Accordingly, FMA and AMA Objections are due to be sustained on this point.

### 2.   Interest in the Action

"[A] party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d at 1249; see also Loyd, 176 F.3d at 1340 ("[t]he intervenor must be 'at least a real party in interest in the transaction which is the subject of the proceeding'" (citation omitted)); Purcell, 85 F.3d at 1512 (same).  The proposed intervenor is required "to anchor its request in the dispute giving rise to the pending lawsuit . . . [and] demonstrate 'an interest relating to the property or transaction which is the subject of the action.'" In re Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1246 (11th Cir. 2006)(citation and emphasis omitted).[11]  To determine whether a proposed intervenor possesses the requisite interest for intervention purposes, the Court looks at the subject matter of the litigation. Georgia, 302 F.3d at 1251.  The inquiry, however, "is 'a flexible one, which focuses

---

[11]  The permissive intervenor "must show that its 'claim or defense and the main action have a question of law or fact in common.'" Bayshore Ford, 471 F.3d at 1246 (citation and emphasis omitted). "In either case, the plain language of Rule 24 requires the intervenor's interest to be based on the action pending before the court." Id.

on the particular facts and circumstances surrounding each [motion for intervention].'" <u>Chiles</u>, 865 F.2d at 1214 (citation omitted).

Here, the subject matter of the litigation is the 1979 <u>FMA</u> Injunction, and the tension between the public's interest in the identifying Medicare provider information and the potential invasion of privacy interests that could result if HHS or CMS release the requested Medicare information. The proposed intervenors assert they have an interest in obtaining the protected government records in conjunction with the operation of their business and/or disseminating the information to the public. They contend that the 1979 <u>FMA</u> Injunction interferes with these interests. The proposed intervenors have a sufficient interest in challenging the 1979 <u>FMA</u> Injunction to support their intervention as of right.

### 3.    Proposed Intervenors' Ability to Protect Their Interests

Closely related to the second factor is the question of whether the 1979 <u>FMA</u> Injunction will "as a practical matter," impair the proposed intervenors' ability to protect their interests. <u>Chiles</u>, 865 F.2d at 1214. Proposed intervenors Dow Jones and RTMD have both established that their interests are affected by the 1979 <u>FMA</u> Injunction. RTMD was specifically denied access to requested documents based upon the 1979 <u>FMA</u> Injunction in the <u>Alley</u> case. Dow Jones has presented evidence that its Agreement with the CMS was limited, in part, by the 1979 <u>FMA</u> Injunction. Thus, the potential intervenors have both established that their interests continue today, and that the Injunction, as a practical matter, impairs their interests. <u>See generally</u> <u>John Doe #1 v. Glickman</u>, 256 F.3d 371, 379-80 (5th Cir. 2001)("[i]n both Lawsuits, the parties are seeking a ruling on whether the public's interest

in the Identifying Information outweighs the potential invasion of privacy that could result if the [agency] discloses that information").

### 4. Whether the Existing Parties Adequately Represent Proposed Intervenors' Interests

"The proposed intervenor has the burden of showing that the existing parties cannot adequately represent its interest, but this burden is 'treated as minimal.'" Georgia, 302 F.3d at 1255 (citation omitted).  While the Court "will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention," Falls Chase, 983 F.2d at 215, "the inadequate representation requirement 'is satisfied if the [proposed intervenor] shows that representation of his interest "may be" inadequate' . . . ."  Chiles, 865 F.2d at 1214 (quoting Trbovich v. United Mine Workers of Amer., 404 U.S. 528, 538 n.10 (1972)).

As is evident by the parties' filings in this case, the proposed intervenors' interest in obtaining access to Medicare records differs markedly from the interests of Plaintiffs FMA and AMA representing Medicare providers, and now, apparently, Defendant HHS, who opposes the proposed intervenors' cross-claims to obtain access to specified documents. See generally Consumers' Checkbook Center for the Study of Servs. v. U/S. Dep't of Health & Human Servs., 554 F.3d 1046, 1049 (D.C. Cir. 2009)(HHS argued that disclosure of requested Medicare documents was barred by FOIA Exemption 6 and by the 1979 FMA Injunction), cert. denied, 130 S.Ct. 2140 (2010).  Moreover, neither Plaintiffs nor Defendants have sought or are seeking to modify or vacate the 1979 FMA Injunction.  The proposed

intervenors have met their minimal burden.[12]  Thus, RTMD and Dow Jones have established

that intervention is warranted, and the Court must next consider the scope of their

intervention.

## B.    Scope of Intervention

Dow Jones argues that because it is entitled to intervention as of right, it should also

be permitted to assert its Cross-Claims for declaratory judgment "which seek a declaration

---

[12]   While neither the parties nor the Magistrate Judge addressed the question of standing, the Court is obligated to ensure that it has subject matter jurisdiction over intervenors, and thus sua sponte addresses the proposed intervenors' standing. See Fla. Wildlife Federation, Inc. v. S. Fla. Water Mgmt. Dist., 647 F.3d 1296, 1302 (11th Cir. 2011).

So long as a live justiciable case and controversy exists between the parties already in the lawsuit, "'a party seeking intervention need not demonstrate that he has standing in addition to meeting the requirements of Rule 24.'"  Loyd, 176 F.3d at 1339 (citation omitted); see also Fla. Wildlife Federation, 647 F.3d at 1302; Purcell, 85 F.3d at 1512 n.4.  However, once the district court in this case entered the permanent injunction and final judgment, "the original case or controversy evaporates," and the intervenor must assert an independent case or controversy in order to maintain standing. Fla. Wildlife Federation, 647 F.3d at 1302.  "The mere existence of a permanent injunction or consent decree thus is insufficient to provide an ongoing case or controversy upon which an intervenor may ride 'piggyback' . . . "  Dillard v. Chilton County Comm'n, 495 F.3d 1324, 1337 (11th Cir. 2007)(internal quotation marks omitted).

"Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims."  Dillard, 495 F.3d at 1330.  To establish constitutional standing to seek relief, a party must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Fla. Wildlife Federation, 647 F.3d at 1302 (internal quotations and citation omitted).  While the proposed intervenors seek to intervene as defendants, they seek relief from a federal court, and thus the same standing requirements apply to their interest in seeking to modify or vacate the 1979 FMA Injunction. See Dillard, 495 F.3d at 1327 (while third-party intervenors in a long-pending Voting Rights Act case raise significant questions about the ongoing vitality of the injunctive remedy approved by the district court 20 years before, they lacked standing to challenge that remedy). The proposed intervenors both allege that the Injunction has caused distinct injuries, specifically that it precludes them from securing, pursuant to FOIA, specific government documents they seek in the pursuit of their business interests.  This alleged injury is concrete and particularized, continuing, traceable to the Injunction, as opposed to generalized, and may be redressed by a favorable decision vacating or modifying the injunction.  See Dillard, 495 F.3d at 1340;  Howard, 782 F.2d at 958-59 (white and nonblack minority employees had standing to challenge promotional remedy in class action filed by black Air Force employees based upon proposed intervenors' argument that the remedy renders them ineligible for promotions solely on account of their race, a sufficient interest that will be affected by the promotional remedy). The Court determines that Dow Jones, and Alley and RTMD have standing to intervene.

that FOIA exemption six does not permit withholding of the LDS Files, the Privacy Act does not prohibit their disclosure, and the [Data Use] Agreement's restrictions are not required by law."  Dow Jones' Response to  HHS Objections at 8.  It contends that its proposed Cross-Claims satisfy the Rule 13(g)'s requirement that cross-claims arise out of the "'same operative facts,'" id. at 9, and that the proposed Cross-Claims are "timely."  Id. at 10.  According to Dow Jones, "since HHS concedes Dow Jones's intervention to challenge the 1979 injunction is timely, a fortiori, its cross-claim for declaratory relief on the same subject must be as well."  Id.

"Once a court grants intervention, whether of right or by permission, the 'intervenor is treated as if [it] were an original party and has equal standing with the original parties.'"  Bayshore Ford, 471 F.3d at 1246 (citation omitted).  However, "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."  Vinson v. Washington Gas Light Co., 321 U.S. 489, 498 (1944).  In this regard, "conditions can be imposed even when a party intervenes as a matter of right under Rule 24(a)(2)."  Southern v. Plumb Tools, 696 F.2d. 1321, 1322 (11th Cir. 1983).

> Rule 24(a) of the Federal Rules of Civil Procedure itself does not mention conditions or restrictions. The Advisory Committee Note to the 1966 Amendment of Rule 24(a), however, provides: "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."  There apparently were no decided cases which provided authority for this assertion.  Even so, several courts have followed its lead and imposed restrictions on an intervenor of right.

Id. (citing 7A C. Wright & A. Miller, Federal Practice and Procedure, § 1922 at 624-25 (1972); McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1073 n.7 (5th Cir. 1970) and Harris v. Gen. Coach Works, 37 F.R.D. 343 (E.D. Mich. 1964)).[13]  "[W]hile intervenors as of right may fully litigate the merits by raising additional claims arising out of the same transactions as the main claim, 'or are ancillary thereto, it is also well-settled that an intervenor in equitable proceedings is bound by all prior orders and decrees as though he had been a party from the inception of the suit.'" United States v. City and County of Honolulu, No. 07-00235DAE-KSC, 2007 WL 4800670, at *2 (D. Haw. Nov. 21, 2007)(quoting(Hall County Historical Soc'y, Inc. v. Ga. Dep't of Transp., 447 F. Supp. 741, 746 (N.D. Ga. 1978)); see generally J.B. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 383 (1987)(Brennan, J., concurring)("restrictions on participation may also be placed on an intervenor of right and on an original party" (citing Rule 24(a) advisory committee's note)).

The Eleventh Circuit has recognized that "courts have broad authority to limit the ability of intervening parties to expand the scope of a proceeding beyond the issues litigated by the original parties." Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1269 (11th Cir. 2001)(citing Vinson, 321 U.S. at 498 ("noting the 'usual procedural rule' that 'an

---

[13]    "In amending [Rule 24(a)], the Advisory Committee on Rules suggested that intervention of right under the Rule might be 'subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings.'" . . . This was not an innovative suggestion but was instead the recognition of a well-established practice."  Shore v. Parklane Hosiery Co., 606 F.2d 354, 356 (2d Cir. 1979)(citations omitted).  As noted by the First Circuit Court of Appeals, however, "the extent to which an intervenor-defendant can enlarge the issues in the case beyond those that the original plaintiff and defendant wish to litigate" is a "difficult issue."  Cotter v. Mass. Ass'n of Minority Law Enforcement Officers, 219 F.3d 31, 36 (1st Cir. 2000)(stating that while "[t]he traditional sense was that a court could not impose conditions on an intervention as of right . . . [,] the 1966 Amendment to [Rule 24(a)] may have changed this rule" (citations omitted)); see also Beauregard v. Sword Servs. LLC, 107 F.3d 351, 352-53 (5th Cir. 1997)("[a]lthough not without some controversy, it is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right" (citing Rule 24(a) advisory committee's note and cases)).

intervenor is admitted to the proceedings as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding'")).  "[T]his limitation is a prudential determination as opposed to a mandate of rule or statute."  Arapahoe County Public Airport Auth. v. FAA, 242 F.3d 1213, 1217 n.4 (10th Cir. 2001).  To this end, the prejudice from an intervention late in a case may be minimized by restricting the scope of intervention.  For example, the Eleventh Circuit in Howard, limited the scope of intervention for intervenors who sought intervention at the point in the litigation where the parties were considering a proposed consent decree, observing:

> Although we recognize that this case has been pending a considerable time, any prejudice that might result from intervention can be minimized by allowing only limited conditional intervention.  Likewise, limiting intervention to a challenge of the remedy only insofar as it restricts intervenor-appellants' promotional opportunities solely on account of race will protect against nullification of the entire settlement.

Howard, 782 F.2d at 960.

The Johnson case is an example of a circumstance where the court limited the scope of intervention for intervenors wishing to expand the proceedings beyond what the original parties presented.  The case involved a challenge by three rejected white female applicants to a university admissions policy as being discriminatory on the basis of race and sex. Johnson, 263 F.3d at 1238.  The court upheld the district court's denial of intervenors' pretrial motion for a special case management scheduling order or extension of discovery, in order to give the intervenors more time to develop support for an argument not advanced by an original party.  Id., 263 F.3d at 1269.  The court determined that "the issue raised by Intervenors would have greatly expanded the scope and burden of the case, and quite

probably necessitated further delays beyond those ostensibly sought by the Intervenors." Id. at 1269-70.

Similarly, in Jones v. Caddo Parish School Bd., 735 F.2d 923 (5th Cir. 1984), the court denied intervention to a person who sought to intervene both individually and on behalf of a class in a long-standing school desegregation case.  In doing so, the court noted that "Ms. Phillips does not seek limited purpose intervention.  What she in effect asked . . . , is full intervention and a completely new start."  Jones, 735 F.3d at 938; see also McDonald, 430 F.2d at 1071, 1072 (intervention as of right by compensation carrier made one day after judgment for the limited purpose of protecting its subrogation interest, would not prejudice any party or interfere with the orderly process of court; "[w]e consider it significant that [intervenor] was not attempting to reopen or relitigate any issue which had previously been determined"); Walsh v. Walsh, 221 F.3d 204, 213 (1st Cir. 2000)(district court properly limited sister's post-trial and post-judgment intervention in Hague Convention child abduction case to distinct legal single issue "that required no additional factfinding").

In Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n, 646 F.2d 117 (4th Cir. 1981), the Fourth Circuit Court of Appeals reversed the district court's denial of a request for intervention but nevertheless limited the scope of the intervention as of right, precluding the intervenor from re-opening the case after final judgment and, in essence, starting it anew.  There, a building company brought a declaratory judgment action against a shipbuilders' association seeking judicial construction of a collective bargaining agreement.  Reversing the district court which permitted the National Labor Relations board (NLRB) to participate in the trial court proceedings only as an amicus, the appellate court

concluded that the NLRB should be permitted to intervene as of right in order to protect its

jurisdiction and processes, and to preclude the possibility of a district court judgment in

conflict with its own pending unfair labor practice proceeding involving the very same

contractual provisions.  Id. at 122.  However, the appellate court concluded that the NLRB's

interest "may be adequately protected by allowing it . . . to prosecute an appeal as defendant-

intervenor from the district court's final judgment on the merits."  Id. at 122.

> Even intervention of right may properly be made conditional by
> the exigencies of the particular case.  See generally 7A C. Wright
> & A. Miller, Federal Practice and Procedure s 1922 (1972).
> Generally speaking an intervenor is held to take the case as he
> finds it [citation omitted], . . . but to give the Board at least that
> position here would require wholly vacating the district court
> proceeding to allow its participation as a party from the outset of
> reopened proceedings.  We think that would be improvident and
> not necessary to give adequate protection to the Board's rights
> as intervenor.

Id. at 122-23 (permitting "intervention as a party defendant for the limited purpose of

prosecuting an appeal . . . from the final judgment of the district court"); accord Santiago-

Sepulveda v. Esso Standard Oil Co. (Puerto Rico), Inc., 256 F.R.D. 39, 43-44 (D. P.R.

2009)(limiting the scope of intervention of successor in interest by precluding intervenor

counterclaims and arguments which would raise issues pertaining to what happens after

termination of franchises is approved by the court, which are separate and distinct from the

underlying issues in the case; "allowing [intervenor] to address them would effectively grant

an impermissible 'enlargement' of the case by an intervenor," and intervenor's request to add

new parties and issues that were not raised by the principal parties, "is effectively seeking

to create a separate case within a case"); United States v. Duke Energy Corp., 171 F.

Supp.2d 560, 565 (M.D. N.C. 2001)("[a]pplicants have an unconditional right to intervene, but

this does not prevent the imposition of reasonable limitations on Applicants' participation to ensure the efficient adjudication of the litigation;" determining that intervenors as of right are subject to the ongoing discovery schedule); In re Discovery Zone Secs. Litigation, 181 F.R.D. 582, 601 (N.D. Ill. 1998)(investor seeking late intervention in a securities fraud class action that was in "settlement posture," may intervene as of right for the limited purpose "to participate in settlement negotiations, to appear at any fairness hearing on a proposed settlement, and to appeal any settlement order entered by this Court"); see generally Geisser v. Bauer, 554 F.2d 698, 705 n.6 (5th Cir. 1977)("an intervenor must accept the proceedings as he finds them").

In addition, a court may limit intervention to particular issues or add conditions to intervention; "[a] nonparty may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly." U.S. v. S. Fla. Water Mgmt. Dist., 922 F.2d 704, 707 (11th Cir. 1991). "Restricting intervention to the particular issues for which the proposed intervenor has a sufficient interest accords with standard party practice." Id. at 707 n.4, 7,11 (permitting intervention only as to pending claims intervenor had a protectable interest in and remanding to district court with directive that the district court could "condition . . . intervention on such terms as will be consistent with the fair, prompt conduct of this litigation"); see also Howard, 782 F.2d at 960-61 (restricting intervenors to participation in the single, remedial issue for which they had standing); Plumb Tools, 696 F.2d at 1321, 1323-24 (district court erred by not limiting the participation of intervenor at trial); Beauregard, 107 F.3d 351 (district court can condition intervenor's participation in admiralty in rem case to intervenor arresting vessel and sharing in custodia legis expenses).

As support for its request to bring entirely new claims post intervention, Dow Jones cites the case <u>Hartley Pen Co. v. Lindy Pen Co.</u>, 16 F.R.D. 141, 153 (S.D. Cal. 1954), for the proposition that "once intervention has been granted the intervener becomes a 'party,' within the meaning of the Rules, 'entitled to litigate fully on the merits.'"  Dow Jones' Response to HHS Objections at 10 (citing <u>Hartley Pen</u>, 16 F.R.D. at 153).  Dow Jones contends that "[t]he courts that have addressed the issue, along with the two leading civil procedure treatises, agree that it is 'very doubtful . . . a court has the right to make significant inroads on the standing of an intervenor of right; and in particular, it should not be allowed to limit him in the assertion of counter-claims and other new claims.'" <u>Id.</u> at 11 (quoting <u>United States v. Exxon Corp.</u>, 773 F.2d 1240, 1306 (Temp. Emer. Ct. App. 1985); and also citing 7A <u>Federal Practice and Procedure</u> § 1922 and <u>United States v. City and County of Honolulu</u>, 2007 WL 4800670, at *2).[14]  Dow Jones argues that "[w]here limits have been imposed, they have been purely 'reasonable conditions of a housekeeping nature.'" <u>Id.</u> (quoting <u>Columbus-Amer. Discovery Group v. Atlantic Mut. Ins. Co.</u>, 974 F.2d 450, 470 (4th Cir. 1992)(where invention of right granted on the eve of trial, district court abused its discretion by forcing intervenors to begin trial without an opportunity for discovery)).

---

[14]  Cases cited by Dow Jones, permitting intervenors to assert cross-claims and counter-claims, are not in a comparable procedural posture as this case, which is 32 years post-judgment.  Rather such intervenor claims have been permitted in cases where the litigation was still pending.  <u>See</u> <u>Atlantis Dev. Corp. v United States</u>, 379 F.2d 818, 821-22, 828-89 (5th Cir. 1967)("the failure to allow [intervenor developer] an opportunity to advance its own theories in law and fact in the trial (and appeal) of the pending case will if the disposition is favorable to the Government 'as a practical matter impair or impede (its) ability to protect (its) interest'"); <u>Conseco v. Wells Fargo Financial Leasing</u>, 204 F. Supp.2d 1186, 1189, 1194 (S.D. Iowa 2002)(defendant permissive intervenor may state a counterclaim against a plaintiff and may bring additional parties into the counterclaim during the pleading stage of the litigation); <u>Hartley Pen Co.</u> 16 F.R.D. at 145 (motion to intervene filed prior to the time fixed for pre-trial hearing).

The flaw in Dow Jones' argument is its failure to recognize the procedural posture of this case, and to distinguish it from those where cross-claims and counter-claims were permitted. Intervenors are admitted to the proceeding as it stands, and are in the same position as the principal parties in the case at the current stage of the litigation, subject to all previous orders and decrees. Intervenors are not permitted to enlarge the issues, or alter the nature of the proceeding. While intervenors as of right are to be treated as if they were an original party, having equal standing with the original parties, See Bayshore Ford, 471 F.3d at 1246, Dow Jones' argument fails to consider that no party in this action is permitted to "start over" and re-litigate individual claims or assert new claims at this point in time. Indeed, even if they wished to do so, the original parties to this action could not at this time, 32 years after entry of final judgment, reopen this proceeding to re-litigate old claims or raise new claims much less seek access to a particular collection of Medicare records, which most likely did not exist at the outset of this litigation in 1978, and at the time of entry of the permanent injunction in 1979.

Re-opening a previously concluded case for trial on new claims presented by the late-filing intervenors has been recognized as prejudicial to the existing parties. Jones v. Caddo Parish School Bd., 735 F.2d at 935 (permitting proposed intervenors to re-open the case weighs on the prejudice factor of the timeliness analysis). On the other hand, any prejudice to intervenors caused by limiting intervention to challenges to the continued propriety of the 1979 Injunction is balanced with the fact that in the event that the 1979 FMA Injunction is vacated or modified, the proposed intervenors will be free to file their own FOIA lawsuits seeking the desired documents. See United States v. S. Fla. Water Mgmt., 922 F.2d at 707

("the court may order a separate trial of claims or issues subject to intervention when 'conducive to expedition and economy'" (citing Rule 42(b)); Jones, 735 F.2d at 936 (would-be intervenor in long running school desegregation case, who is not bound by the consent decree in the case, is "free to file suit seeking further desegregation" of the parish school system).[15]

The Eleventh Circuit has advised that this case is properly before the Court for "a proceeding to alter or vacate the injunction." Alley, 590 F.3d at 1210.[16]  Final judgment was entered in this case 32 years ago.  At this stage of the litigation, the appropriate procedural vehicle for seeking vacatur or modification of the 1979 FMA Injunction is to pursue a motion pursuant to Rule 60(b), Federal Rules of Civil Procedure.[17]  In this posture, the rights of all

---

[15]   The Court rejects Dow Jones' argument that "[i]f the 1979 Declaratory Judgment and Permanent Injunction was vacated, HHS would have no basis to withhold the LDS Files or impose conditions on their dissemination." Dow Jones' Response to HHS Objections at 8.  Each FOIA case is to be determined based upon the facts and law presented.  Vacatur or modification of the 1979 FMA Injunction is not dispositive of the question of whether HHS has a basis to withhold the Medicare documents requested by Dow Jones and RTMD, or impose conditions on their dissemination.  See Consumers' Checkbook Center for the Study of Servs. v. U.S. Dep't of Health & Human Servs., 554 F.3d 1046, 1050 n.3 (D.C. Cir. 2009), cert. denied, 130 S.Ct. 2140 (2010).  Because the Eleventh Circuit concluded that the 1979 FMA Injunction barred disclosure of the requested data, it had "no need to decide if Exemption 6 [to the FOIA] would prevent it."  Alley, 509 F.3d 1201 n.9. (noting the Consumer Checkbook decision).  This determination is clearly left for another day.

[16]   Indeed, the Eleventh Circuit recommended that Alley file such a motion, referring to the 1982 motion filed by HHS for construction or modification of the 1979 FMA Injunction to provide for disclosure of Medicare information for law enforcement purposes.  Alley, 590 F.3d at 1204.

[17]   Rule 60(b)(5) "permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" Horne v. Flores, 129 S.Ct. 2579, 2593 (2009)(quoting Fed. R. Civ. P. 60(b)(5)).  "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" Id. (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992)); see also Hodge v. Dep't of Housing and Urban Dev., 862 F.2d 859, 861-62 (11th Cir. 1989)(Congress has codified in Rule 60(b)(5) the judicial formulation of a court's inherent power to modify an injunction in adaptation to changed conditions).

Relief pursuant to Rule 60(b)(6) "authorizes relief for 'any other reason justifying relief from the
(continued...)

of the parties are limited; none are permitted to bring new claims.  See Bradford v. Unum Life

Ins. Co. of America, 224 F. App'x 937, 938 n.2 (11th Cir. 2007)(Rule 60(b) provides "no

avenue" to the extent movant seeks to litigate new claims); Bush v. Raytheon Co., No. 8:07-

cv-2087-T-24AEP, 2011 WL 1336386, at *3 (M.D. Fla. April 7, 2011)("'Rule 60(b) was never

intended to permit parties to relitigate the merits of claims or defenses, or to raise new claims

or defenses that could have been asserted during the litigation of the case'" (citation

omitted)).   Moreover, prejudice from intervention at this time is minimized by limiting the

scope of the intervention to consideration of the continuing propriety of the 1979 FMA

Injunction itself.  See Jones, 735 F.2d at 935.  Accordingly, intervention in this case is limited

to a request on the part of intervenors to vacate or modify the 1979 FMA Injunction, and

those proposed counter-claims and cross-claims seeking dissolution of the 1979 FMA

Injunction will construed as a proposed motion to modify or vacate the Injunction brought

pursuant to Rule 60(b).  See Rule 24(c)(motion to intervene must be "accompanied by a

pleading that sets out the claim or defense for which intervention is sought").[18]  However, as

---

[17](...continued)
operation of the judgment.'"  Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir. 2006)(quoting Fed. R. Civ. P. 60(b)(6)).  "Rule 60(b)(6) motions must demonstrate 'that the circumstances are sufficiently extraordinary to warrant relief.'"  Id. (citation omitted).

[18]   In so limiting the scope of intervention in this case based upon its procedural posture, to a Rule 60 motion to modify or vacate the 1979 FMA injunction, the Court makes no determination on the merits of Dow Jones', or Alley and RTMD's proposed remaining cross-claims, or HHS' objections to the proposed cross-claims (and to the Report) arguing failure to state a claim, venue, or lack of subject matter jurisdiction.  See Turn Key Gaming, Inc. 164 F.3d at 1081 ("[a]n application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face").

Accordingly, the Court does not adopt the Magistrate Judge's conclusion that to not allow the proposed cross-claims is tantamount to "dismissing" them, which "is more properly considered on a motion to dismiss, not a motion to intervene."  Report at 12; see also id. at 13-14.  Additionally, the Court declines to adopt that Magistrate Judge's conclusion "that this Court is the proper venue for seeking relief
(continued...)

neither request is in the form of a motion nor accompanied by a proper memorandum of legal authority, the Court will require Dow Jones and RTMD to each file a formal Rule 60 motion, which complies with the local rules of this Court, seeking the requested relief.

Upon due consideration, it is hereby

**ORDERED**:

1.      AMA's and FMA's Limited Objections to May 18 Report and Recommendation (Doc. 39) are **SUSTAINED**, to the extent consistent with the foregoing.

2.      The Objection of Defendants Department of Health and Human Services and Kathleen Sebelius to Magistrate Judge's Report and Recommendation (Doc. 40) is **SUSTAINED**, to the extent consistent with the foregoing.

3.      The Report and Recommendation (Doc. 37) is **ADOPTED IN PART**, only to the extent consistent with the foregoing.

4.      Dow Jones & Company, Inc.'s Motion to Reopen Case (Doc. 7) is **GRANTED**.

5.      Dow Jones & Company, Inc.'s Motion to Intervene (Doc. 1) is **GRANTED IN PART** as follows:

A.      Dow Jones & Company, Inc. is entitled to intervene as of right, pursuant to Rule 24(a), Federal Rules of Civil Procedure.

B.      Dow Jones & Company, Inc.'s proposed First Cross-Claim Against HHS (Doc. 1-1 at 16) will not be permitted.

---

[18](...continued)
needed to acquire Medicare payment information covered by the 1979 Injunction." Report at 6. The Court specifically declines to adopt any legal conclusion pertaining to the merits of the proposed cross-claims.

C.     Dow Jones & Company, Inc.'s proposed Second Cross-Claim Against HHS (Doc. 1-1 at 17) will not be permitted.

D.     Dow Jones & Company, Inc.'s proposed Third Cross-Claim Against HHS and First Counter-Claim Against All Plaintiffs (Dissolution of 1979 Injunction) (Doc. 1-1 at 18) will be construed as a proposed motion to vacate or modify the Final Declaratory Judgment and Permanent Injunction entered in this case on October 22, 1979.

6.     Jennifer D. Alley and Real Time Medical Data, L.L.C.'s ("RTMD") Motion to Intervene (Doc. 20) is **GRANTED IN PART** as follows:

A.     Alley and RTMD are entitled to intervene as of right, pursuant to Rule 24(a), Federal Rules of Civil Procedure.

B.     RTMD's proposed First Cross-Claim Against HHS (Doc. 21 at 10) will not be permitted.

C.     RTMD's proposed Second Cross-Claim Against HHS and First Counter-Claim Against All Plaintiffs (Dissolution of the 1979 Injunction) (Doc. 21 at 11) will be construed as a proposed motion to vacate or modify the Final Declaratory Judgment and Permanent Injunction entered in this case on October 22, 1979.

7.     The parties and intervenors shall submit by **November 18, 2011**, a joint Case Management Report, setting forth proposed deadlines for Discovery, if necessary, and for the submission of Motions, pursuant to Rule 60(b), Federal Rules of Civil Procedure, and Responses thereto.

**DONE AND ORDERED** in Jacksonville, Florida, this 26th day of September, 2011.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

lc12

Copies to:

Counsel of Record

-36-